UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-60257-BB

SENTRY DATA SYSTEMS, INC.,

        Plaintiff,

v.

CVS HEALTH, CVS PHARMACY, INC.,
WELLPARTNER INC., and
WELLPARTNER, LLC,

        Defendants.

_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION FOR INITIAL CASE MANAGEMENT HEARING,
AND RESPONSE IN OPPOSITION TO PLAINTIFF'S
CROSS MOTION FOR EXPEDITED HEARING**

Defendants hereby respond to Sentry's briefing opposing Defendants' request for a case

management hearing and filing a cross motion requesting an expedited merits hearing on their

Motion for a Preliminary Injunction. *See* Doc. Nos. 11, 12.  Sentry's briefing encapsulates

exactly why the parties need a case management hearing and a scheduling order before this

litigation devolves into a morass of duplicative motions ending in a trial by surprise.  Sentry's

briefing not only shifts the goal posts concerning what issues are relevant to their claims and

grounds for seeking an injunction, but it also re-argues (and reformulates) Sentry's merits

arguments contained in its Motion for a Preliminary Injunction and Hearing—while finessing its

lack of specifics supporting its claims.[1]  *See* Doc. No. 4.

---

[1]  Defendants yesterday filed a motion with this Court for a 14 day extension of time in which to
file its response to Plaintiffs' Complaint and Preliminary Injunction Motion.  *See* Doc. No. 10.
Plaintiff's counsel consents to the extension to respond to the Complaint, but nevertheless
refuses to consent to an extension on the preliminary injunction response.  The shifting nature of
Plaintiff's position regarding a preliminary injunction, as reflected in its briefing filed yesterday,

Having notably not filed for a temporary restraining order (or even making a motion for an expedited hearing before the instant briefing), Sentry now invites this Court to rush to judgment and grant the drastic remedy of a preliminary injunction on an incomplete record.  The Court should decline Sentry's invitation.

## BACKGROUND

CVS acquired Wellpartner, a leading provider of 340B administrative services, on November 30, 2017, which became a wholly owned subsidiary of CVS.  Beginning in late 2017, Defendants began informing covered entities already doing business with CVS of the acquisition and of Defendants' future plans to compete for business of all covered entities—not just those of Sentry.  Sensing a competitive threat, Sentry raised concerns through legal counsel in a series of letters and threatened to terminate its 340B Platform Agreement with CVS and shut down the 340B services it provided.  Despite multiple requests, Sentry failed to provide any specific details regarding Defendants' alleged wrongdoing.  Instead, when pressed, and late on a Friday evening before a threatened weekend shutdown in services, Sentry's counsel provided a 150-plus paragraph draft complaint as a way of "provid[ing] CVS with the information that it seeks."  *See* Doc. No. 11 Ex. F.  Sentry also extended for a mere 24 hours its shutoff threat.  On Monday, February 5, before Defendants had a meaningful opportunity to respond, Sentry filed this lawsuit against Defendants, and later that evening, unilaterally terminated (and breached) its 340B Platform Agreement with CVS and shut down its access to 340B "Backbone" services.

---

provides an additional justification as to why this Court should grant a short one time extension of CVS/Wellpartner's time to respond to the preliminary injunction motion.

## ARGUMENT

A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly establishes its burden of persuasion. *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000). Establishing a right to a preliminary injunction is a heavy burden and one that is made harder by Sentry's decision to argue its Motion on an undeveloped record. *See id.* at 1165-76 ("[A]n undeveloped record . . . makes it harder for a plaintiff to meet [its] burden of proof."). Additionally, "issuance of preliminary injunctive relief is frowned upon where the moving party substantiates [its] side of a factual dispute on information and belief," as Sentry has done here. *Clark v. Merrill Lynch*, No. 95-808-CIV-T-17C, 1995 WL 17909500, at *6 (M.D. Fla. June 15, 1995), *report and recommendation adopted sub nom. Clark v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, No. 95-808-CIV-T-17C, 1995 WL 437540 (M.D. Fla. July 20, 1995).

Sentry did not seek a temporary restraining order, and it did not initially seek an expedited hearing in connection with its Motion for a Preliminary Injunction. *See* Doc. No. 4. Sentry's Motion for a Preliminary Injunction raises highly factual and complex issues that involve different contracts and relationships with hundreds of third parties going back three years, contain few specific facts that would enable Defendants to understand what they have allegedly done wrong, what they should be enjoined from doing, or why Sentry is entitled to an injunction. Defendants cannot understand the specifics of their alleged wrongdoing, and consequently cannot defend themselves, without the facts underlying the allegations. The Plaintiff has failed to provide this information, and so limited discovery is necessary. Defendants' request for limited discovery should be granted or the Motion for Preliminary Injunction denied outright.

Although the Plaintiff suggests a three hour hearing would be sufficient, *see* Doc. Nos. 4, 11, an opportunity for discovery, and a hearing lasting at least one (and perhaps) two days is needed.  As the Plaintiff acknowledges in its complaint, "the workflows associated with the 340B program can be complex," and Defendants cannot imagine how the parties could provide the Court with sufficient background to understand the issues, let alone allow both sides to present evidence, in three hours.  The only factual evidence Plaintiff has offered thus far are two generalized and self-serving declarations from the same two Sentry employees it plans to offer as witnesses at a hearing, whose testimony Sentry "primarily" intends to use to prove its claims. *See* Doc. No. 11 at 8.

Sentry's Motion argues that Defendants have interfered with different contracts and relationships with hundreds of third parties going back three years.  By the nature of its claims, Defendants are entitled to discovery identifying  concerning each Sentry customer that allegedly broke some "contract" or "active business deals that are otherwise certain to close" in favor of working with Wellpartner. *See* Doc. No. 4 at 6-9.  It is necessary because allegations of tortious interference require an examination of each contract at issue; and if there was no contract, the details that made any "active business deals" so certain.  Whether tortious interference with a contract occurred must therefore be assessed on a case-by-case basis to determine whether there was truly unjustified interference, or whether there was merely legitimate market competition.

Similarly, the Plaintiff's breach of contract and misappropriation of trade secret claims require discovery.  The Plaintiff claims in its instant briefing that "Sentry had a contract to serve as the exclusive 340B platform provider to CVS."  Doc. No. 11 at 4.  The implication in this statement is that CVS violated this provision by acquiring Wellpartner and making public statements concerning its *future* plans for how covered entities could access CVS pharmacies

without a "Backbone."  CVS is entitled to discovery to determine why CVS is allegedly in breach of the contract.  Additionally, with respect to its allegedly "highly confidential" Sentry customer list, discovery is needed to determine how that information is protected, and what information it contains apart from that which is publicly available (for example see Exhibit A to the complaint that was not filed under seal) or readily ascertainable (since CVS obviously knows which covered entities it is contracted with regardless of the third party administrator involved), which would exclude it from trade secret protection.  *See Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (information that is generally known or readily accessible to third parties cannot qualify for trade secret protection).

Sentry also has used the instant briefing to alter the scope of its claims for relief and to re-argue the merits of those claims.

To take one prominent instance, Sentry's briefing claims it "has agreed not to pursue one basis for relief set forth in its motion for injunctive relief," namely, any claims of misappropriation of trade secrets separate from the customer list.  *See* Doc. No. 12 at 2 n.3. Unfortunately, the broader misappropriation of trade secrets claim is also sprinkled throughout Sentry's Motion for a Preliminary Injunction, making it hard for the Defendants to know whether and how to respond to such allegations.  For example, the Plaintiff's claims of tortious interference depend in part on its assertion that Defendants enticed covered entities to hire Wellpartner by claiming "the switch from Sentry to Wellpartner's 340B platform would be seamless"—an ability that Sentry claims was possible only as a result of Defendants' alleged theft of Sentry's proprietary information.  *See* Motion for Preliminary Injunction, Doc. No. 4, at 6-7, 13.  The Plaintiff, in a confusing footnote in its instant briefing, tries to wave aside Defendants' rightful queries about this claim—*see* Doc. No. 12 at 6 n.5—but it is far from clear

that such allegations are not part of Plaintiff's claims, at least implicitly.[2]  Accordingly,

discovery is necessary to understand and clarify this issue.

Similarly, and perhaps realizing that claims of tortious interference for speculative losses

of future customers or potential customers is not actionable, the Plaintiff limits its discussion

about how it will prove tortious interference to those situations where Sentry had definite

contracts with covered entities, as opposed to situations involving "potential clients."  *Compare*

Doc. No. 11, at 9 (discussing how Sentry's purported evidence concerning tortious interference

will be limited to business relationships "evidenced by contracts"), *with*, Doc. No. 4 at 6, 9

(vaguely accusing Defendants of interfering with "covered entity customers [that] are under

contract with Sentry or *are engaging in active business deals that are otherwise certain to*

*close*," or with "*potential* clients that were *on the verge* of retaining" Sentry) (emphasis added).

Discovery is needed to clarify these issues and provide Defendants a meaningful

opportunity to respond to Sentry's allegations.  Courts may expedite discovery when a party

establishes good cause.  *Sabal Trail Transmission, LLC v. 9.669 Acres of Land, More Or Less, in*

*Polk Cty. Fla.*, No. 8:16-CV-640-T-33AEP, 2016 WL 1729484, at *2 (M.D. Fla. Apr. 20, 2016).

In determining whether the moving party has shown "good cause," a court examines the

following factors: (1) whether a motion for preliminary injunction is pending; (2) the breadth of

the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on

the opponent to comply with the request for discovery; and (5) how far in advance of the typical

---

[2] Sentry itself seems unclear about its own position on this issue.  In the same briefing, after claiming the only trade secret now at issue is the allegedly confidential customer list, Sentry states that "CVS and Wellpartner have used and are continuing to use Sentry's trade secrets, *including* confidential customer lists, to target Sentry's customers."  Doc. No. 11 at 11 (emphasis added).  It remains unclear to the Defendants what trade secrets, specifically, Plaintiff is placing at issue in this litigation.

discovery process the request is made. *Id.* at \*1 (M.D. Fla. Apr. 20, 2016); *Thyssenkrupp*

*Elevator Corp. v. Hubbard*, No. 2:13-CV-202-FTM-29, 2013 WL 1953346, at \*1 (M.D. Fla.

May 10, 2013).

Importantly, courts generally find good cause in cases in which the plaintiff seeks a

preliminary injunction.  *Sabal Trail Transmission,* 2016 WL 1729484, at \*1. The remaining

factors all weigh in favor of expedited discovery, as well.  Defendants do not seek full discovery,

but rather limited production of documents and deposition only of (1) the witnesses that Plaintiff

will call at the evidentiary hearing, each of whom have also submitted declarations in support of

the Motion for Preliminary Injunction; and (2) corporate witness most knowledgeable about the

subject matter of defendant's claims being advanced in its Motion for Preliminary Injunction (if

different than (1)).  The discovery is crucial to allowing Defendants to understand the evidence

and facts underpinning Plaintiff's claims for misappropriation of trade secrets, tortious

interference, and breach of contract.  The burden on Plaintiff is minimal, as the documents

requested are focused and limited, and the deponents potentially the same persons who Plaintiff

plans to call as witnesses at the evidentiary hearing.  Finally, the request for discovery is not

earlier than necessary for use at an upcoming evidentiary hearing. Accordingly, good cause

certainly exists for expedited discovery.

While Defendants agree on the need for a substantive hearing, we believe the hearing

cannot reasonably be expedited beyond the schedule we have proposed.  As detailed in

Defendants' scheduling motion, such an abrupt hearing without proper discovery would both

deprive Defendants of a meaningful opportunity to defend itself in a substantial and complex

matter, and the Court to rule on a developed record.

## A CASE MANAGEMENT CONFERENCE AND
## SCHEDULING ORDER ARE NECESSARY

The Defendants reiterate the need for a case management conference and a scheduling order to set a reasonable discovery and briefing schedule on the Motion for Preliminary Injunction and the Complaint that will enable the Court to decide the injunction on a well-developed record.  In addition, one of Defendants' counsel, Harley S. Tropin, is leaving on a previously scheduled vacation and will be unavailable until March 8.  While some briefing and discovery can certainly proceed in his absence, it makes sense—and Defendants would certainly appreciate—his meaningful participation in this matter, and hereby request that any substantive hearing be scheduled on or after March 8.  We, therefore, suggest that the scheduling order previously proposed by Defendants be entered by the Court.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel, Harley S. Tropin, states that he has conferred with counsel for Plaintiff in a good faith effort to resolve the issues, but has been unable to agree on the relief requested herein.

**KOZYAK TROPIN THROCKMORTON LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Miami, FL 33134
Tel:  (305) 372-1800
Fax:  (305) 372-3508

By: /s/ *Harley S. Tropin*
    Harley S. Tropin, Esq.
    Florida Bar No. 241253
    Gail A. McQuilkin

Dechert LLP
Joseph A. Fazioli
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499
Telephone: (650) 813-4836

Michael G. Cowie
1900 K Street, NW
Washington, D.C. 20006
Telephone: (202) 261-3339

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2018, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record either via transmission of Notices of Electronic

Filing generated by CM/ECF.

By: /s/ *Harley S. Tropin*