UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-60257

SENTRY DATA SYSTEMS, INC.,

     Plaintiff,

v.

CVS HEALTH, CVS PHARMACY, INC.,
WELLPARTNER INC., and
WELLPARTNER, LLC,

     Defendants.

_____/

**CVS'S MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

FACTS ......................................................................................................................... 1

STANDARD OF REVIEW ........................................................................................... 3

ARGUMENT ............................................................................................................... 4

I.      SENTRY FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR UNLAWFUL
        TYING UNDER SECTION 1 OF THE SHERMAN ACT ................................... 4

        A.      Sentry Lacks Antitrust Standing ........................................................ 4

                i.      Sentry is unable to allege specific facts showing that it has suffered
                        antitrust injury ........................................................................... 5

                ii.     Sentry failed to allege specific facts showing it is an "efficient
                        enforcer" of the antitrust laws ................................................... 7

        B.      Sentry's tying claim should be dismissed because CVS lacks the requisite
                market power ....................................................................................... 7

II.     SENTRY FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT
        BASED ON THE 340B PLATFORM SERVICES AGREEMENT'S
        EXCLUSIVITY PROVISION ........................................................................... 10

III.    SENTRY HAS NOT ALLEGED ANY FACTS ESTABLISHING
        MISAPPROPRIATION OF TRADE SECRETS OR CONFIDENTIAL
        INFORMATION ............................................................................................. 11

        A.      Sentry Fails to State a Claim for Misappropriation of Trade Secrets Under
                Federal and State Law ....................................................................... 11

                i.      Sentry's customer list is not a trade secret ............................... 12

                ii.     Sentry's other alleged trade secrets are too vague to warrant trade
                        secret protection ....................................................................... 13

IV.     SENTRY'S OTHER CLAIMS MUST BE DISMISSED BECAUSE THEY ARE
        DISPLACED BY FLORIDA LAW .................................................................... 14

V.      SENTRY FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE ........... 16

VI.     SENTRY FAILS TO STATE AN UNFAIR COMPETITION CLAIM ....................... 18

VII.    SENTRY FAILS TO ALLEGE FACTS ESTABLISHING A VIOLATION OF
        FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
        ("FDUTPA") .................................................................................................. 18

VIII.   SENTRY FAILS TO ALLEGE CONVERSION OF ITS PROPERTY OR
        BREACH OF CONTRACT BASED ON MISAPPROPRIATION ........................... 20

CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADT LLC v. Vivint, Inc.*,
    No. 17-CV-80432, 2017 WL 5640725 (S.D. Fla. Aug. 3, 2017) ...........................................19

*Am. Red Cross v. Palm Beach Blood Bank, Inc.*,
    143 F.3d 1407 (11th Cir. 1998) ..................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................3, 5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983).................................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................3, 5, 6

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*,
    169 So. 3d 164 (Fla. 4th DCA 2015) .........................................................................19

*Clark Memorials of Alabama Inc. v. SCI Alabama Funeral Servs. LLC*,
    991 F. Supp. 2d 1151 (N.D. Ala. 2014).......................................................................8

*Coach Services, Inc. v. 777 Lucky Accessories, Inc.*,
    752 F. Supp. 2d 1271 (S.D. Fla. 2010) .......................................................................16

*Daniel v. American Bd. Of Emergency Medicine*,
    428 F.3d 408 (2nd Cir. 2005)....................................................................................7

*Developmental Techs., LLC v. Valmont Indus., Inc.*,
    No. 8:14-CV-2796-MSS-JSS, 2016 WL 7320908 (M.D. Fla. July 18, 2016).........................15

*Duty Free Americas, Inc. v. Estee Lauder Cos.*,
    797 F.3d 1248 (11th Cir. 2015) ..............................................................................4, 17

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
    472 F.3d 23 (2d Cir. 2006)........................................................................................8

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)................................................................................................8

*Elsevier Inc. v. Doctor Evidence, LLC*,
    No. 17-CV-5540 (KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018)............................13, 14

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)......................................................................................3

## TABLE OF AUTHORITIES

**Page(s)**

*Gonzalez-Hernandez v. Orbay*,
   No. 08-21782-CIV, 2009 WL 10668626 (S.D. Fla. Jan. 15, 2009)..........................................14

*Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n*,
   No. 16-cv-22236, 2016 WL 5661636 (S.D. Fla. Sept. 30, 2016)............................................11

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
   547 U.S. 28 (2006).................................................................................................................7

*ISO Claims Servs., Inc., ACI Div. v. Bradford Techs., Inc.*,
   No. 3:09-CV-976-J-34JRK, 2011 WL 13176422 (M.D. Fla. Sept. 29, 2011) ........................14

*Kaufman v. Time Warner*,
   836 F.3d 137 (2nd Cir. 2016)..................................................................................................8

*Levenger Co. v. Feldman*,
   516 F. Supp. 2d 1272 (S.D. Fla. 2007) ..................................................................................13

*M.C. Dean, Inc. v. City of Miami Beach, Fla.*,
   199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016) ........................................................................12

*Mann v. Palmer*,
   713 F.3d 1306 (11th Cir. 2013) ...............................................................................................13

*Menudo Int'l, LLC v. In Miami Prod., LLC*,
   No. 17-21559-CIV, 2018 WL 1138300 (S.D. Fla. Mar. 2, 2018) ...........................................16

*Metzler v. Bear Automotive Serv. Equip. Co.*,
   19 F. Supp. 2d 1345 (S.D. Fla. 1998) ......................................................................................9

*Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*,
   845 F. Supp. 2d 1241 (M.D. Fla. 2012), *aff'd in part*, 505 F. App'x 928 (11th
   Cir. 2013) ...............................................................................................................................16

*NicSand,Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ...........................................................................................4, 5, 6

*Pals Grp., Inc. v. Quiskeya Trading Corp.*,
   No. 16-23905-CIV, 2017 WL 532299 (S.D. Fla. Feb. 9, 2017)..............................................11

*QSGI, Inc. v. IBM Global Fin.*,
   No. 11–80880–CIV, 2012 WL 1150402 (S.D. Fl. Mar. 14, 2012)............................................5

*Realauction.com, LLC v. Grant Street Group, Inc.*,
   82 So. 3d 1056 (Fla. 4th DCA 2011) ......................................................................................16

**TABLE OF AUTHORITIES**

**Page(s)**

*RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*,
  579 F. App'x 779 (11th Cir. 2014) ............................................................................20

*Rodriguez v. Recovery Performance & Marine, LLC*,
  38 So. 3d 178 (Fla. 3d DCA 2010) ...........................................................................19

*Spanish Broadcasting Sys. of Florida, Inc. v. Clear Channel Comms., Inc.*,
  376 F.3d 1065 (11th Cir. 2004) ...................................................................................5

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993).......................................................................................................5

*Stagg Shop of Miami, Inc. v. Moss*,
  120 So. 2d 39 (Fla. 2nd. DCA 1960) .........................................................................18

*State v. Beach Blvd. Automotive Inc.*,
  139 So. 3d 380 (Fla. 1st. DCA 2014) .........................................................................18

*Supercase Enter. Co. v. Marware, Inc.*,
  No. 14-CV-61158-CIV, 2015 WL 11622424 (S.D. Fla. Oct. 26, 2015) .................14

*Swiss Watch Int'l, Inc. v. Movado Grp., Inc.*,
  No. 00-7703-CIV, 2001 WL 36270980 (S.D. Fla. June 21, 2001).........................13

*Templeton v. Creative Loafing Tampa, Inc.*,
  552 So. 2d 288 (Fla. 2nd. DCA 1989) .......................................................................12

*Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.*,
  959 F.2d 468 (3rd Cir. 1992) .......................................................................................9

*United Subcontractors, Inc. v. Godwin*,
  No. 11-81329-CV, 2012 WL 13019648 (S.D. Fla. July 6, 2012)............................18

*Univ. Express, Inc. v. U.S. S.E.C.*,
  177 F. App'x. 52 (11th Cir. 2006) ..............................................................................12

*Valley Prods. Co., Inc. v. Landmark, a Div. of Hosp. Franchise Sys., Inc.*,
  128 F.3d 398 (6th Cir. 1997) ........................................................................................4

*Vape Fiends, Inc. v. Lightfire Grp.*, LLC,
  No. 17-60951-CIV, 2017 WL 5953429 (S.D. Fla. Aug. 21, 2017) .........................15

*Wackenhut Corp. v. Maimone*,
  389 So. 2d 656 (Fla. 4th. DCA 1980) ........................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

18 U.S.C. § 1839 ...................................................................................................................11, 12

Fla. Stat § 688.002 ...............................................................................................................11, 12

Fla. Stat. § 688.008 ...................................................................................................................14

**Other Authorities**

Sentry Data Systems, *Auburn Community Hosptial Selects Sentry Data Systems' Analytics and 340B Solutions* (June 19 2017), available at
https://www.sentryds.com/auburn-selects-sentry-analytics-and-340b-solutions/ .........................13

Sentry Data Systems, Sentry Stories, 340B Solutions, Analytics Solutions, available at
https://www.sentryds.com/sentry-stories-340b-solutions/........................................................13

U.S. Department of Health and Human Services, Health Resources & Services Administration, Office of Pharmacy Affairs 340B OPAIS, available at
https://340bopais.hrsa.gov/contractpharmacysearch ...............................................................12

## INTRODUCTION

The Complaint by Plaintiff Sentry Data Systems, Inc. ("Sentry") is an attempt by the largest competitor to use the Court system to block competition that threatens its traditional way of conducting business.  The alternative approach introduced by an emerging competitor will enable hospitals to bypass the large, traditional administrators like Sentry and obtain full services from pharmacies.  The marketplace dynamics described in the Complaint reflect change and innovation, not any illegal conduct that harms consumers.  Because of Sentry's failure to back up its claims with plausible factual allegations, its Complaint must be dismissed.

## FACTS

Sentry provides 340B administrative services.  Compl. ¶ 1.  Defendant CVS Pharmacy, Inc. is a pharmacy innovation company that provides health care solutions, including retail and specialty pharmacy services, to patients.  Defendant Wellpartner, Inc. provides 340B administrative services to covered entities (primarily hospitals) and before its combination with CVS it sold stand-alone administrative services.  In November 2017, CVS acquired Wellpartner and began offering integrated administrative and pharmacies services to hospitals (Defendant CVS Pharmacy and Defendant Wellpartner, collectively, "CVS").[1]

The 340B program helps low-income patients who could not otherwise afford access to prescription drugs.  Established by Congress under the Veterans Health Care Act of 1992, the 340B program provides a mechanism for eligible patients of covered entities[2] to receive access to

---

[1] Sentry's Complaint also alleges claims against CVS Health and Wellpartner, Inc.  As detailed in a separately filed Motion to Dismiss, filed on March 13, 2018, all charges against those entities should be dismissed for lack of jurisdiction and Rule 8 violations.  CVS has also separately filed an Opposition to Plaintiff's Motion for a Preliminary Injunction.

[2] Covered entities include hospitals, clinics, and outpatient centers.  The identity of covered entities, information about their eligibility, and the pharmacies they contract with to provide their

discounted prescription drugs.  Compl. ¶ 14.  Covered entities retain ultimate responsibility to ensure compliance with federal mandates.  *Id.* at ¶¶ 14, 20.  To meet these obligations and facilitate the dispensation of discounted prescription drugs to patients, many covered entities hire third-party administrators.  *Id.* at ¶¶ 24-25.  The 340B program refers to participating pharmacies as contract pharmacies and CVS has served as a contract pharmacy to hospitals.  CVS has adapted to a variety of software and data formats to share data with administrators and hospitals.

Beginning on July 9, 2014, pursuant to a "340B Platform Agreement," CVS contracted with Sentry to receive a service through Sentry's "Backbone" product that was intended to facilitate CVS's interactions with a variety of data formats from various administrators chosen by covered entities.  Compl. ¶ 50.  Sentry's Backbone product was supposed to translate the data from various covered entities (which may or may not have used Sentry or Wellpartner for their own 340B administrative service needs) and convey the data to CVS in one format.

In November, 2017, CVS completed an acquisition of Wellpartner.  Beginning in December 2017, CVS informed hospitals that they had another choice.  While some pharmacy chains (such as Walgreens and Albertsons) have already developed internal administrative services, CVS's expansion provided hospitals with another alternative to the traditional approach of separately contracting with administrators.  Hospitals can choose CVS and need not contract with another intermediary administrator.  With CVS's integrated services, those hospitals would be free to contract with other pharmacies, including other chains and independent pharmacies.  Through CVS, it would obtain the administrative and pharmacy services together.  Companies

---

eligible patients access to discounted drugs, among other information, is publicly available on the website of the federal Office of Pharmacy Affairs.

specializing in administrative services such as Sentry will lose business as the marketplace moves toward more seamless, integrated services.

In February 2018, Sentry terminated its contractual relationship with CVS, (despite claiming in this lawsuit that the 340B Platform Agreement is still alive and valid, *see* Compl. ¶ 50), cut off CVS from its 340B Backbone software program, and filed the instant lawsuit alleging various claims.  Sentry also moves for a preliminary injunction based on a portion of its breach of contract, misappropriation of trade secrets, and tortious interference claims.

## STANDARD OF REVIEW

Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead sufficient facts to state a claim that is plausible on its face.  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  To meet *Twombly's* plausibility standard, the allegations must contain sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the claimed misconduct.  In the antitrust context, in particular, an allegation of a violation of Section 1 of the Sherman Act must do more than create an inference of a possible violation of the Act.  *Twombly*, 550 U.S. at 555.  Even facts that "create[] a suspicion [of] a legally cognizable right of action" fall short of the plausibility standard.  *Id.*

Instead a complaint must allege precise factual details of illegal conduct.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679)). In making this determination, a court should separate "the factual and legal [arguments] of a claim."  *Id.* at 210.  While well-pleaded facts must be taken as true, a court may "disregard any legal conclusions" or merely conclusory statements.  *Id.* at 210-11.

## ARGUMENT

I.   **SENTRY FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR UNLAWFUL TYING UNDER SECTION 1 OF THE SHERMAN ACT**

At most, Sentry has alleged a series of speculative facts that, if true, *might* result in a future loss of business as more hospitals decide to do business with CVS rather than Sentry. Sentry asserts that these business losses are attributable to CVS's alleged anticompetitive behavior. Yet such choices by covered entities, *if* they have even made those choices, reflect marketplace preference for enhanced, more integrated pharmacy services rather than separate contracting with an administrator.

### A.   **Sentry Lacks Antitrust Standing**

A plaintiff alleging tying must plausibly plead antitrust injury in order to survive a motion to dismiss.  *See Valley Prods. Co., Inc. v. Landmark, a Div. of Hosp. Franchise Sys., Inc.*, 128 F.3d 398 (6th Cir. 1997) (affirming the dismissal of a tying claim because the plaintiff failed to show it suffered antitrust injury); *NicSand,Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) (explaining that "we not only may—but we must—reject claims under Rule 12(b)(6) when antitrust standing is missing").  Sentry fails to show it has antitrust standing because it does not allege facts indicating that it suffered concrete harm due to anticompetitive behavior.  The Eleventh Circuit follows a two-part test to determine whether a plaintiff has antitrust standing. *See Duty Free Americas, Inc. v. Estee Lauder Cos.,* 797 F.3d 1248, 1272-73 (11th Cir. 2015). First, the plaintiff must establish that it has suffered "antitrust injury." *Id.*  Second, the plaintiff must establish that it is an efficient enforcer of the antitrust laws. *See Estee Lauder Cos.*, 797 F.3d at 1272-73.  Sentry fails to establish either of these prongs.

### i.   Sentry is unable to allege specific facts showing that it has suffered antitrust injury

Antitrust laws, including the Sherman Act, are designed to protect competition, not to save individual entities from a competitor providing an alternative to the traditional way of doing business.  *See Spanish Broadcasting Sys. of Florida, Inc. v. Clear Channel Comms., Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004).  "Critically, under [the Sherman Act,] an antitrust plaintiff must show harm to competition in general, rather than merely damage to an individual competitor."  *Id.*; *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) ("The [antitrust] law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself.").

Here, the alleged business losses Sentry faces are the product of a pharmacy adding services so it can work more effectively with hospitals.  What the Complaint shows is that large traditional administrators like Sentry risk losing of business to pharmacies offering more convenient, streamlined services.  Sentry has not pled any facts that indicate, beyond a mere possibility, that CVS harmed competition (rather than Sentry) through anticompetitive behavior.  *QSGI, Inc. v. IBM Global Fin.*, No. 11–80880–CIV, 2012 WL 1150402, at *2 (S.D. Fl. Mar. 14, 2012) ("Absent factual allegations of antitrust injury, an antitrust claim will fail under *Twombly* and *Iqbal*.").

At most Sentry has alleged facts showing it may lose business to CVS at some point in the future, as CVS integrates administrative and pharmacy services.  Yet it is just as likely that such business losses, if they occur, are due to hospitals seeing the value of working more closely with pharmacies and avoiding another layer of bureaucracy.  A competitor's allegations that it might lose business are insufficient to sustain an antitrust claim.  *Nicsand*, 507 F.3d at 451 ("[A] 'naked assertion' of antitrust injury, the Supreme Court has made clear, is not enough; an

antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury.") (quoting *Twombly*, 550 U.S. at 557)).

Aside from conclusory statements, Sentry alleges three examples of mystery customers choosing to switch to Wellpartner. These hospitals allegedly explained the decision to Sentry as follows: one "felt 'handcuffed[,]'" one "'ha[d] little choice[,]'" and that one "cannot lose [CVS]." Compl. ¶ 63. These isolated comments may just as easily be attributed to CVS's introduction of an enhanced product that better aligns hospital and pharmacy care. Allegations that three covered entities out of thousands switched away from traditional administrators is insufficient to properly allege harm to competition itself.

Additionally, Sentry fails to allege whether these three covered entities represent any significant portion of their business. Sentry also fails to mention that while it may have lost three customers, it remains free to compete for thousands of covered entities, the vast majority of which do not use CVS at all. Because Sentry is clearly able to compete for covered entities, it has failed to allege sufficient facts demonstrating antitrust injury. *See NicSand*, 507 F.3d at 453-54 (plaintiff failed to allege antitrust injury when able to compete despite defendant's exclusive agreement).

The only other piece of evidence Sentry uses to support its claim is a one-page marketing letter to numerous covered entities notifying them of CVS's ability to combine administrative and pharmacy services. Compl. Ex. F. The document mentions Wellpartner being the "exclusive" 340B administrator for CVS and that "[t]o ensure all clients benefit from these enhancements, [CVS] will transition all covered entities to Wellpartner by December 31, 2018." *Id.* This single document does not say that hospitals must use only one administrator. *See id.* It does not say that hospitals must use only CVS pharmacies. It conveys that CVS will handle the

administrative functions internally and hospitals no longer need to contract with an additional administrative intermediary.

> ii.     **Sentry failed to allege specific facts showing it is an "efficient enforcer" of the antitrust laws**

Sentry also must be an "efficient enforcer" of the antitrust laws at issue in order to demonstrate that it has antitrust standing.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537-46 (1983) (discussing factors relevant to the "efficient enforcer" assessment).  Hospitals as customers are more efficient enforcers than competitors seeking to maintain a lock on administrative contracting.

The "efficient enforcer" factors depend on a determination that antitrust injuries have occurred, which is not the case here.  *See Daniel v. American Bd. Of Emergency Medicine*, 428 F.3d 408, 443-44 (2nd Cir. 2005) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing.") (internal citation omitted). The injury Sentry alleges is vague and amorphous, and is just as easily attributable to legitimate procompetitive business practices.  Sentry pleads nothing suggesting it would be an efficient enforcer.

Sentry alleges that CVS's conduct results in a lack of choice for hospitals in the marketplace.  If this were true, these covered entities would be the more efficient enforcers of any such harm.  *See id.* (stating that "one factor raises particular standing concerns: the presence of other efficient antitrust enforcers 'whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement.'") (quoting *Associated Gen. Contractors of Cal., Inc.*, 459 U.S. at 542).

> B.     **Sentry's tying claim should be dismissed because CVS lacks the requisite market power**

A successful claim based on allegations of tying requires pleading sufficient "market power," which is the dispositive factor in an illegal tying arrangement.  *Illinois Tool*

*Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 35-36 (2006); *see Kaufman v. Time Warner*, 836 F.3d 137, 147 (2nd Cir. 2016) (affirming the dismissal of a tying claim for failure to plausibly allege market power); *Clark Memorials of Alabama Inc. v. SCI Alabama Funeral Servs. LLC*, 991 F. Supp. 2d 1151, 1159-1966 (N.D. Ala. 2014) (determining plaintiff did not allege sufficient facts to show market power in the tying product market and dismissing antitrust claim); *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006) (finding tying allegations insufficient to survive a motion to dismiss). "Market power" is defined as "'the ability of a single seller to raise price and restrict output[,]" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992), and is "inferred from the seller's possession of a pre-dominant share of the market." *Id.* at 464.

Sentry alleges that CVS was the second largest of a group of six pharmacies that made up two-thirds of 340B pharmacy locations.  It acknowledges that CVS is not the single largest contract pharmacy, but rather Walgreens is.  Compl. at ¶ 27.  Based on the allegations, a group of six pharmacies make up merely two-thirds of the market, with CVS not being the largest among them. Clearly CVS lacks the requisite market power to support a tying arrangement allegation.

Recognizing this pitfall, Sentry instead broadly claims that CVS is a "must have" contract pharmacy based on ideas about its future growth prospects. Yet almost three-fourths of contract pharmacy locations currently belong to those of CVS's competitors.  Exhibit A to Sentry's Complaint supports the view that CVS lacks the requisite market power to support a tying claim. *See* Compl. Ex. A (showing several dozen covered entities with the highest use of CVS contract pharmacies (most of which are below 45%)).

Well behind Walgreens and surrounded by many other substantial competitors, CVS lacks market power sufficient to support an antitrust claim.  This data, as alleged, indicates CVS

does not have "market power," and courts have held that market share at this low level "provides unrefuted evidence that [the defendant] lacks power in the tying market." *Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 481 (3rd Cir. 1992) (citing *Times-Picayune Publ'g. Co. v. U.S.*, 345 U.S. 594, 612-13 (1953) for the holding that 33-40% market share was "insufficient to invoke 'per se' rule"); *see also Metzler v. Bear Automotive Serv. Equip. Co.*, 19 F. Supp. 2d 1345, 1361 (S.D. Fla. 1998) (market shares below 30% insufficient as a matter of law to demonstrate market power in a tying case).

To sidestep these shortcomings, Sentry cherry-picks local geographic regions to manufacture market power.  Compl. ¶¶ 29, 30.  First, it alleges, "CVS makes up 30 percent or more of the contract pharmacies in Maryland and Washington DC, and over 40 percent of the contract pharmacies in the Metropolitan Statistical Areas comprising Wilkes-Barre, Scranton, Harrisburg and Carlisle, Pennsylvania." Compl. ¶ 30.  But this allegation actually supports CVS's position that it lacks requisite market power to support a tying claim, as it shows that CVS overall market share is less than 30%.  *See Metzler* 19 F. Supp. 2d at 1361.

Next, Sentry offers the Court a chart it created listing several covered entities, the town each lies in, and—out of "CVS," "CVS Specialty," and "Non CVS,"—the percent of total CVS, for these carefully selected covered entities.  *See* Compl. Ex. A.  It is unclear if this chart depicts the pharmacies that patients from these hospitals actually use, the pharmacies the hospitals have contracted with, or the pharmacies within an unknown-mile radius from the hospital.  The chart offers no information other than that CVS has many locations.  Alleging that some hospitals in some regions currently choose to heavily rely on CVS pharmacies to help dispense drugs in no way sufficiently alleges market power.

## II.    SENTRY FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT BASED ON THE 340B PLATFORM SERVICES AGREEMENT'S EXCLUSIVITY PROVISION

Sentry's allegations of breach of contract on the exclusivity theory (Count 3, Compl. ¶¶ 86, 92) flow from a mistaken premises: that CVS breached the exclusivity provision of the 340B Platform Services Agreement by acquiring Wellpartner and making plans to incorporate its own administrative services.  CVS did not breach this provision because it did not "enter into any contract, or similar arrangement, for the Services with any third party other than Sentry, nor appoint any other third party as the 340B Platform Software Services Provider for" CVS.  *See* Compl. Ex. C, 340B Platform Agreement Section 1 ("Agreement"); Compl. ¶¶ 86, 92.  The contractual restriction does not bar CVS from entering into administrative services and providing those services within CVS.  Sentry never received a non-compete.

Sentry's position that CVS and Wellpartner are "third parties" within the meaning of Section 1 of the 340B Platform Agreement defies common sense.  Wellpartner is a business unit within CVS—not a third party.  Sentry alleges that "[a]t all relevant times, Wellpartner has been a 'third party' to CVS Pharmacy, as that term is used in [the] 340B Platform Agreement." Compl. ¶ 92.  However, "third party" is not a defined term in the agreement, and it only appears in two places: Section 1, described above, and the confidentiality provisions, that prevent disclosure of confidential information to any "third party."  *See* Agreement section 6.1.

Even if Wellpartner were somehow a third party to CVS (rather than part of the same company) within the meaning of the 340B Platform Agreement, Sentry makes no plausible allegation that Wellpartner is offering the same services as those contemplated by the 340B Platform Agreement.  Section 3 of the 340B Platform Agreement makes it clear that the services contemplated by the Agreement were for the provision of Sentry's "Backbone" product.  *C.f.*

Compl. ¶¶ 51-52.  But Wellpartner affirmatively does not provide services akin to Sentry's "Backbone" product, and Sentry makes no allegation that it does.

Finally Sentry's conclusory allegation of damages is insufficient to state a claim, *see* Compl. ¶ 84, especially where the underlying contract is terminable without cause by either party upon 30 days' notice.  Agreement § 5.3; *see Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n*, No. 16-cv-22236, 2016 WL 5661636, at *2 (S.D. Fla. Sept. 30, 2016).[3]

## III.   SENTRY HAS NOT ALLEGED ANY FACTS ESTABLISHING MISAPPROPRIATION OF TRADE SECRETS OR CONFIDENTIAL INFORMATION

### A.   Sentry Fails to State a Claim for Misappropriation of Trade Secrets Under Federal and State Law

Sentry fails to state a claim under federal and Florida state law for misappropriation of trade secrets.  To do so, a plaintiff must show that "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-23905-CIV, 2017 WL 532299, at *3 (S.D. Fla. Feb. 9, 2017) (citing *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001)).  Under both federal and state law, a trade secret is information that derives economic value from not being generally known, and is subject to reasonable efforts to keep secret.[4]  Liability under both

---

[3] Leave to amend on this ground would be futile since Sentry unilaterally shut off its Backbone services to CVS within hours of filing this case in material breach of the same agreement.

[4] *See* 18 U.S.C. § 1839(3) (defining trade secret); Fla. Stat. § 688.002(4) (same).

federal and Florida state law requires an act of misappropriation. *M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016).[5]

      **i.**        **Sentry's customer list is not a trade secret**

Sentry alleges that CVS misappropriated a purportedly "highly confidential" customer list. Compl. ¶ 47. However, any customer list was not a trade secret because it was either publicly available or could be obtained in the ordinary course of business. *See Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (information that is generally known or readily accessible to third parties cannot qualify for trade secret protection); *see also Templeton v. Creative Loafing Tampa, Inc.,* 552 So. 2d 288, 289–90 (Fla. 2nd. DCA 1989) (finding no evidence a list included information not available from public sources, that the allegedly misappropriating party was no doubt able to construct his own lists without reference to the lists from the plaintiff, and that there was no great secret as to the identity of the members of the list, all of whom were members of a readily ascertainable class).

Sentry's conclusory statement that its customer list is "not generally known to, and not readily ascertainable by, other persons who may be able to obtain economic value from their disclosure," (Complaint at ¶ 117) may be ignored when it is undisputed in the public record that a list of all covered entities and the contract pharmacies they are associated with is available to the public, free of charge, on a federal government website.[6] Sentry itself publicizes many of its

---

[5] To "misappropriate" a trade secret means to disclose or use a trade secret of another without express or implied consent by a person who at the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. 18 U.S.C. 1839(5)(B)(ii)(II); *see also* Fla. Stat § 688.002(2).

[6] Visit https://340bopais.hrsa.gov/contractpharmacysearch.  "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Univ. Express, Inc. v. U.S. S.E.C.*, 177 F. App'x. 52, 53 (11th Cir. 2006).

customer names,[7] and it included an unsealed list of covered entities and pharmacies as Exhibit A to its Complaint.  Moreover, Sentry does not allege that covered entities in the finite 340B space do not share the identity of their third party administrators with industry participants.

But regardless of any customer list, Sentry does not allege that CVS used the customer list and *only* communicated with and marketed to covered entities that had a contract with Sentry.  To the contrary, the CVS Announcement was sent to all covered entities that contracted with CVS, regardless of which 340B administrator they use.  *Compare* Compl. ¶ 58 *with* Ex. F. There is no factual allegation in the Complaint that CVS could not have approached the same covered entities without access to Sentry's alleged customer list.[8]

### ii.    Sentry's other alleged trade secrets are too vague to warrant trade secret protection

Sentry's general allegations that "data specifications, operational documentation, [and] internal processes and procedures" constitute misappropriated trade secrets are insufficient to withstand a motion to dismiss because they are vague and fail to put CVS on notice of allegedly wrongful conduct.  *See*, *e.g.*, Compl. ¶ 111.  Courts demand more detailed descriptions of alleged trade secrets.  *See Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1286-87 (S.D. Fla. 2007) (holding claims that "'know how,' i.e. information and processes necessary to manufacturing…" were too vague to support a trade secret claim); *Swiss Watch Int'l, Inc. v. Movado Grp.*, *Inc.*, No. 00-7703-CIV, 2001 WL 36270980, at *3 (S.D. Fla. June 21, 2001) (claims that "operational techniques and processes" were trade secrets were too vague to support a claim); *Elsevier Inc. v.*

---

[7] *See, e.g.,* https://www.sentryds.com/sentry-stories-340b-solutions/; https://www.sentryds.com/auburn-selects-sentry-analytics-and-340b-solutions/

[8] For purposes of a 12(b)(6) motion to dismiss, allegations (such as those in paragraph 64) based "upon information and belief" do not have to be taken as true. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013).

*Doctor Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) ("Alleging the existence of general categories of 'confidential information,' without providing any details to 'generally define the trade secrets at issue,' does not give rise to a plausible allegation of a trade secret's existence . . . .") (internal citation omitted).

But even if such information did rise to the level of a trade secret or confidential information, Sentry does not carry its burden in establishing that CVS "misappropriated" it. There are no credible allegations even suggesting why or how CVS would have used such information, especially when Wellpartner does not offer Backbone-type services.

## IV.   SENTRY'S OTHER CLAIMS MUST BE DISMISSED BECAUSE THEY ARE DISPLACED BY FLORIDA LAW

The Florida Uniform Trade Secrets Act ("FUTSA") displaces common law torts concerning trade secret misappropriation, *see* Fla. Stat. § 688.008(1)[9], when allegations of trade secret misappropriation comprise the underlying wrong and there is no "material distinction" between the FUTSA claim and the tort claim. *Gonzalez-Hernandez v. Orbay*, No. 08-21782-CIV, 2009 WL 10668626, at *2 (S.D. Fla. Jan. 15, 2009).  Sentry's claims of trade secret misappropriation under Florida law displaces its claims for conversion, unfair competition, violation of Florida's Deceptive and Unfair Trade Practices Act ('FDUTPA"), and tortious interference (to the extent the tortious interference claims are based on misappropriation of trade secrets) because they are based on the same allegations.  *See Supercase Enter. Co. v. Marware, Inc.*, No. 14-CV-61158-CIV, 2015 WL 11622424, at *8 (S.D. Fla. Oct. 26, 2015) (dismissing conversion and FDUTPA claims as displaced by FUTSA); *ISO Claims Servs., Inc., ACI Div. v. Bradford Techs., Inc.*, No. 3:09-CV-976-J-34JRK, 2011 WL 13176422, at *5 (M.D. Fla. Sept.

---

[9] Fla. Stat. § 688.008(1) provides that FUTSA "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret."

29, 2011) (dismissing unfair competition claim as displaced by FUTSA because it was "based on the same facts that comprise the trade secret misappropriation claim"); *Developmental Techs., LLC v. Valmont Indus., Inc.*, No. 8:14-CV-2796-MSS-JSS, 2016 WL 7320908, at *6 (M.D. Fla. July 18, 2016) (dismissing FDUTPA claim as displaced by FUTSA); *Vape Fiends, Inc. v. Lightfire Grp.,* LLC, No. 17-60951-CIV, 2017 WL 5953429, at *3 (S.D. Fla. Aug. 21, 2017) (finding no material distinction between plaintiff's FUTSA and tortious interference claim, and dismissing tortious interference claim as displaced by FUTSA).

There are no material distinctions between the allegations comprising the tort claims and the allegations supporting the FUTSA claim: they all depend on CVS's alleged misuse of Sentry's trade secrets. The conversion and unfair competition claims are based on the same facts that comprise the trade secret misappropriation claim, namely that CVS allegedly misappropriated Sentry's proprietary business information, including information about Plaintiff's 340B software and technology platform and information regarding its data feed process. Compl. ¶¶ 111, 114, 115, 129, 137.  Likewise, the Plaintiff's FDUTPA claim is based on CVS's alleged scheme to take Sentry's "confidential and trade secret information," Compl. ¶ 80.  Furthermore, Sentry's tortious interference claims turn on accusations that CVS and Wellpartner used Sentry's allegedly confidential information to approach and entice those customers to switch to Wellpartner, harming Sentry's business relationships.  Compl. ¶¶ 101, 105, 107, 111, 114, 115, 123.  Sentry asserts that CVS "[is] using the confidential customer list Sentry provided them to solicit Sentry customers."  Compl. ¶¶ 64, 107, 111.  Since those same allegations underlie Sentry's misappropriation of trade secret claims, its related tort claims are displaced and those causes of action should be dismissed.

## V.     SENTRY FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

"Under Florida law, the elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2018 WL 1138300, at *3 (S.D. Fla. Mar. 2, 2018) (internal citation omitted).

Sentry alleges in part that CVS is targeting covered entities that *might* do business with Sentry in the future:  "Plaintiff has business relationships with certain covered entities with an expectation of . . . probable future economic benefit," and "one of Sentry's covered entity customers was seeking to close certain agreements with CVS pharmacies that would have closed but for CVS's refusal to use Sentry's 340B platform."  Compl. ¶¶ 104, 105.  Yet Sentry does not provide sufficient facts of an actual and identifiable understanding or agreement that in all probability would have been completed if the defendant had not interfered, as needed.  *Coach Services, Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp.2d 1271, 1273 (S.D. Fla. 2010); *see Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1259 (M.D. Fla. 2012), *aff'd in part*, 505 F. App'x 928 (11th Cir. 2013) (finding Plaintiff could not show an existing business relationship).  A speculative hope for future business is not sufficient to sustain the tort of interference with a business relationship. *Realauction.com, LLC v. Grant Street Group, Inc.*, 82 So. 3d 1056, 1060 (Fla. 4th DCA 2011). Accordingly, as to its prospective clients, Sentry has not demonstrated the existence of a business relationship.

Sentry also fails to plead a claim with regards to its existing clients because it does not plausibly allege an intentional and unjustified interference with a business relationship.  That element "requires the plaintiff to allege that 'the defendant acted without justification.'"  *Duty Free Am. v. Estee Lauder Cos.*, 797 F.3d. 1248, 1280 (11th Cir. 2015)(quoting *Sec. Title Guarantee Corp. of Balt. v. McDill Columbus Corp.*, 543 So. 2d 852 , 855 (Fla. Dist. Ct. App. 1989)). While this element is normally "a fact-intensive inquiry that requires 'an examination of the defendant's conduct, its motive, and the interests it sought to advance,'" dismissal is nonetheless proper where the complaint is "devoid of any allegations of impropriety" and the plaintiff "does not allege that any of its competitors took action for the sole purpose of interfering with [the plaintiff's] prospective relationships." *Id.* at 1280, 1281-82 (dismissing the tortious interference count because the plaintiff did not allege that its competitors entered the competition pretextually, solely for the purpose of harming [the plaintiff's] prospective interests.") Moreover, Florida recognizes a "privilege of interference" for competitors.  *Id.* at 1280 (quoting *Wackenhut Corp. v. Maimone*, 389 So. 2d 656 , 657-58 (Fla. Dist. Ct. App. 1980). This means that "even if the plaintiff has an existing, terminable-at-will contract,[10] the defendant's interference to protect its economic interests is privileged unless the plaintiff alleges 'a purely malicious motive' divorced from any 'legitimate competitive economic interest.'" *Id.* (citation omitted).

Here, what Sentry claims is tortious interference with its clients is consistent with legitimate and privileged competition coming from a new streamlined way of serving hospitals. There is no suggestion in the Complaint that CVS's December 2017 announcement, *see* Compl.

---

[10] Contracts terminable at will include contracts terminable upon 30 days' notice, *Wackenhut Corp. v. Maimone,* 389 So.2d 656, 658 (Fla. 4th DCA 1980), and by extension of the same logic, contracts terminable by non-renewal.

Ex. F, was motivated by malice toward Sentry.  Nor does the Complaint plausibly allege that

CVS used improper means despite Sentry's repeated use of the label "coercive tactics."  To the

extent Sentry is suggesting that the improper means are the antitrust or misappropriation of trade

secret theories, the tortious interference counts fail for the same reason as those claims.

## VI.   SENTRY FAILS TO STATE AN UNFAIR COMPETITION CLAIM

Even if Florida law did not displace Sentry's unfair competition claim, the claim would

still fail on other grounds.  There are no allegations of deceptive or fraudulent conduct and

likelihood of customer confusion. *Stagg Shop of Miami, Inc. v. Moss,* 120 So. 2d 39, 40 (Fla.

2nd. DCA 1960); *see also United Subcontractors, Inc. v. Godwin*, No. 11-81329-CV, 2012 WL

13019648, at *2 (S.D. Fla. July 6, 2012) ("Defendants have not alleged the elements required to

state an unfair competition claim under Florida law because they did not allege any deceptive

conduct that would be likely to confuse consumers.").  The Complaint includes no allegation that

CVS is attempting to pass off Sentry's services as its own, or that covered entities are likely to be

confused between Sentry services and CVS services.

## VII.  SENTRY FAILS TO ALLEGE FACTS ESTABLISHING A VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

Sentry alleges CVS and Wellpartner engaged in deceptive or unfair trade practices by

misappropriating confidential data and committing an antitrust violation.  Compl. ¶ 80.  Sentry

fails to state a claim under FDUTPA because it did not allege "actual damages" under FDUTPA.

*State v. Beach Blvd. Automotive Inc.*, 139 So. 3d 380, 393 (Fla. 1st. DCA 2014) (citing *Baptist

Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. 1st. DCA 2012)).[11]

---

[11] As a general matter, because "state court decisions regarding FDUTPA claims are rare," state
courts routinely look to federal courts in Florida and the 11th Circuit for guidance.  *See*

Here Plaintiff claims that the alleged "[unfair] conduct caused actual damage to Plaintiff in the form of damaged relationships with existing and *potential* covered entity customers and loss of revenue." Compl. ¶ 83 (emphasis added). But loss of revenue cannot count because it is considered special or consequential damages. "Florida courts hold that, 'under the FDUTPA, the term "actual damages" does not include special or consequential damages.'" *ADT LLC v. Vivint, Inc.,* No. 17-CV-80432, 2017 WL 5640725, at *5 (S.D. Fla. Aug. 3, 2017) (quoting *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010)). "Accordingly, lost profits, the 'quintessential example of consequential damages,' are not permitted." *ADT*, 2017 WL 5640725, at *5 (citing cases).

To establish actual damages, Sentry must do more than allege "damaged relationships with existing and potential" customers and instead "allege a difference in the market value of a product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." Compl. ¶ 83; *ADT*, 2017 WL 5640725, at *5. In *ADT LLC* , defendant, a competitor, poached clients from ADT through misrepresentative statements and by causing some of those clients to break their contracts with ADT and contract with the defendant. The Court found that ADT did not state a claim for actual damages, because ADT failed to show how its claim for damages met the standard.

Accordingly the Plaintiff's claims under FDUTPA must be dismissed. *See Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) ("[W]hen a

---

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 168 (Fla. 4th DCA 2015).

plaintiff in her complaint fails to allege a recoverable loss under FDUTPA, the complaint fails to state a cause of action under FDUTPA.").

## VIII.   SENTRY FAILS TO ALLEGE CONVERSION OF ITS PROPERTY OR BREACH OF CONTRACT BASED ON MISAPPROPRIATION

Sentry's remaining allegations of breach of contract and conversion depend on a false notion that CVS and Wellpartner converted Sentry's alleged confidential data, thereby also breaching various confidentiality provisions.  But as discussed above, Sentry has not plausibly alleged there was confidential or proprietary information at issue, and even if there was, CVS certainly did not misappropriate or convert it.  *See RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.,* 579 F. App'x 779, 786 (11th Cir. 2014) ("to state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property.").  Accordingly these claims must fail.

## <u>CONCLUSION</u>

For the foregoing reasons, CVS's Motion to Dismiss Plaintiff's Claims should be granted.

**KOZYAK TROPIN THROCKMORTON LLP**

2525 Ponce de Leon Boulevard, 9th Floor


2525 Ponce de Leon Boulevard, 9th Floor
Miami, FL 33134
Tel:  (305) 372-1800
Fax:  (305) 372-3508

By: /s/ *Harley S. Tropin*
    Harley S. Tropin, Esq.
    Florida Bar No. 241253
    Gail A. McQuilkin

**DECHERT LLP**
    Joseph A. Fazioli
    2440 W. El Camino Real, Suite 700
    Mountain View, CA 94040-1499

    Michael G. Cowie
    1900 K Street, NW
    Washington, D.C. 20006

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ *Harley S. Tropin*
    Harley S. Tropin, Esq.