# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.: 18-CV-60257-BLOOM/VALLE

SENTRY DATA SYSTEMS, INC.,

        Plaintiff,

v.

CVS HEALTH, CVS PHARMACY, INC.,
WELLPARTNER, INC., and
WELLPARTNER, LLC,

        Defendants.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS AS TO CVS HEALTH AND WELLPARTNER, INC.

**BOIES SCHILLER FLEXNER LLP**

Stephen N. Zack, Esq.
100 SE Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307
Email: szack@bsfllp.com

Carl E. Goldfarb, Esq.
Brendon M. Olson, Esq.
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: cgoldfarb@bsfllp.com
Email: bolson@bsfllp.com

Christopher G. Renner, Esq.
1401 New York Ave., NW
Washington, DC 20005
Telephone: (202) 237-2727

Facsimile: (202) 237-6131
Email: crenner@bsfllp.com

*Counsel for Plaintiff Sentry Data
Systems, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 1

I.      WELLPARTNER, LLC, REMAINS LIABLE FOR WELLPARTNER, INC.'S
MISCONDUCT ................................................................................................ 1

II.     THIS COURT HAS PERSONAL JURISDICTION OVER CVS HEALTH
CORPORATION ............................................................................................... 3

        A.     CVS Health Is Subject to Personal Jurisdiction Based on Sentry's Antitrust
Claim .......................................................................................................... 3

        B.     This Court Has Pendent Personal Jurisdiction Over Sentry's Other Claims .......... 7

        C.     Personal Jurisdiction Over CVS Health Is Also Appropriate Under Florida's
Long-Arm Statute ...................................................................................... 8

        D.     Alternatively, the Court Should Permit Sentry to Supplement Its Response With
Jurisdictional Discovery .......................................................................... 14

III.    CVS HEALTH'S RULE 8 ARGUMENT IS MERITLESS ........................................... 15

REQUEST FOR HEARING ......................................................................................... 15

CONCLUSION .......................................................................................................... 16

CERTIFICATE OF SERVICE ...................................................................................... 17

## **TABLE OF AUTHORITIES**

Page

**Cases**

*Abedi v. US Bank Nat'l Ass'n*,
   No. 1:16-CV-1747-SCJ, 2017 WL 4865459 (N.D. Ga. Oct. 2, 2017) ..................................... 11

*ACLU of Fla., Inc. v. City of Sarasota*,
   859 F.3d 1337 (11th Cir. 2017) ................................................................................................ 14

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ................................................................................................... 7

*Bernadele v. Bonorino*,
   608 F. Supp. 2d 1313 (S.D. Fla. 2009) ................................................................................... 15

*BNSF Ry. Co. v. Tyrrell*,
   __ U.S. __, 137 S. Ct. 1549 (2017) ........................................................................................... 5

*Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*,
   322 F. App'x 852 (11th Cir. 2009) ............................................................................................ 7

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) ............................................................................................... 11

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................................................................. 5

*Callum v. CVS Health Corp.*,
   137 F. Supp. 3d 817 (D.S.C. 2015) .................................................................................. 13, 14

*Citibank, N.A. v. Data Lease Fin. Corp.*,
   904 F.2d 1498 (11th Cir. 1990) ................................................................................................. 2

*Consol. Dev. Corp. v. Sherritt, Inc.*,
   216 F.3d 1286 (11th Cir. 2000) ................................................................................................. 4

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) .............................................................................. 13, 14

*Cronin v. Wash. Nat'l Ins. Co.*,
   980 F.2d 663 (11th Cir. 1993) ................................................................................................... 7

*Cross Country Home Servs., Inc. v. Home Serv. USA Corp.*,
   No. 08-61456, 2010 WL 55439 (S.D. Fla. Jan. 6, 2010) ........................................................ 10

*Daimler AG v. Bauman,*
   571 U.S. 117, 134 S. Ct. 746 (2014) ................................................................ 4, 6, 9

*Eaton v. Dorchester Dev. Inc.,*
   692 F.2d 727 (11th Cir. 1982) .......................................................................... 15

*Elandia Int'l, Inc. v. Ah Koy,*
   690 F. Supp. 2d 1317 (S.D. Fla. 2010) ............................................................... 7

*Francosteel Corp. v. M/V Charm,*
   19 F.3d 624 (11th Cir. 1994) ............................................................................... 4

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
   No. 07–61542–CIV, 2010 WL 6397500 (S.D. Fla. Aug. 18, 2010) ................... 11

*In re Blue Cross Blue Shield Antitrust Litig.,*
   225 F. Supp. 3d 1269 (N.D. Ala. 2016) ........................................................ 5, 6, 7

*Internet Solutions Corp. v. Marshall,*
   557 F.3d 1293 (11th Cir. 2009) ......................................................................... 11

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310 (1945) ............................................................................................. 4

*Johnson v. SmithKline Beecham Corp.,*
   724 F.3d 337 (3d Cir. 2013) ................................................................................ 2

*JP Morgan Trust Co. Nat'l Ass'n v. Mid-Am. Pipeline Co.,*
   413 F. Supp. 2d 1244 (D. Kan. 2006) .................................................................. 1

*Koch v. Royal Wine Merchants, Ltd.,*
   847 F. Supp. 2d 1370 (S.D. Fla. 2012) ............................................................... 7

*Kyle K. v. Chapman,*
   208 F.3d 940 (11th Cir. 2000) ........................................................................... 15

*LIG Ins. Co. v. Inter-Florida Container Transp., Inc.,*
   564 F. App'x 495 (11th Cir. 2014) .................................................................... 11

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,*
   288 F.3d 1264 (11th Cir. 2002) ...................................................................... 9, 10

*Peruyero v. Airbus S.A.S.,*
   83 F. Supp. 3d 1283 (S.D. Fla. 2014) ............................................................ 9, 10

*Prou v. Giarla,*
   62 F. Supp. 3d 1365 (S.D. Fla. 2014) ................................................................. 7

*Republic of Panama v. BCCI Holdings (Lux.) S.A.*,
    119 F.3d 935 (11th Cir. 1997) ................................................................. 3, 4, 6

*Sculptchair, Inc. v. Century Arts, Ltd.*,
    94 F.3d 623 (11th Cir. 1996) .......................................................................... 11

*Semtek Int'l, Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) .......................................................................................... 2

*State v. Am. Tobacco Co.*,
    707 So. 2d 851 (Fla. 4th DCA 1998) ............................................................. 10

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
    447 F.3d 1357 (11th Cir. 2006) ..................................................................... 13

*U.S. SEC v. Carrillo*,
    115 F.3d 1540 (11th Cir. 1997) ............................................................... 4, 5, 13

*United Steelworkers of Am. v. Connors Steel Co.*,
    855 F.2d 1499 (11th Cir. 1988) ................................................................. 11, 14

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) ..................................................................... 14

## **Statutes**

15 U.S.C. § 22 .......................................................................................................... 5

17 U.S.C. § 401(b)(3) ............................................................................................ 13

Del. Code. Ann. tit. 6, § 18-214 ............................................................................. 1

Fla. Stat. § 48.193(1) .............................................................................................. 9

Fla. Stat. § 48.193(1)(a)(2) .................................................................................. 13

Fla. Stat. § 48.193(2) .............................................................................................. 9

## **Rules**

Fed. R. Civ. P. 12(h)(1) ............................................................................................ 5

## **Regulations**

17 C.F.R. § 240.12b-2 ............................................................................................ 12

## INTRODUCTION

Plaintiff Sentry Data Systems, Inc. ("Sentry"), respectfully requests that this Court deny the separate motion by Defendants Wellpartner, Inc., and CVS Health Corporation ("CVS Health") (ECF No. 39) to dismiss with prejudice the claims against them.  Delaware law is clear that Wellpartner, LLC, cannot use a corporate conversion to escape legal liabilities incurred through Wellpartner, Inc.'s misconduct.  CVS Health cannot evade the personal jurisdiction of this Court because Sentry's federal antitrust claim authorizes personal jurisdiction and, alternatively, CVS Health is merely an alter ego of Defendant CVS Pharmacy, Inc. ("CVS Pharmacy"), over whom Defendants have not challenged jurisdiction.  Finally, CVS Health's Rule 8 pleading argument is meritless and should be denied.

## ARGUMENT

**I.    WELLPARTNER, LLC, REMAINS LIABLE FOR WELLPARTNER, INC.'S MISCONDUCT**

Defendants seek to dismiss *with prejudice* all claims against Wellpartner, Inc., asserting that it is no longer a "distinct entity."  While Wellpartner, Inc., may[1] have converted to Wellpartner, LLC, under Delaware law, Delaware law is also explicitly clear that Wellpartner, LLC, remains responsible for the liabilities incurred by Wellpartner, Inc.  Del. Code. Ann. tit. 6, § 18-214(e) ("The conversion of any other entity into a domestic limited liability company shall not be deemed to affect any obligations or liabilities of the other entity incurred prior to its

---

[1]    Defendants support their claim of conversion with authenticated certificates from the Delaware Secretary of State.  *See* Exhibit A to Defendants' Motion to Dismiss [ECF No. 39-1].  At least one court has recognized, though, that these certificates are not "conclusive proof" that the requisite formalities of conversion were followed and that it is improper to resolve that issue on a motion to dismiss.  *JP Morgan Trust Co. Nat'l Ass'n v. Mid-Am. Pipeline Co.*, 413 F. Supp. 2d 1244, 1258-59 (D. Kan. 2006).  By citing Delaware law regarding the effect of a conversion, Plaintiff is in no way conceding that the conversion was ever properly implemented.

conversion to a domestic limited liability company or the personal liability of any person incurred prior to such conversion."); *id.* § 18-214(f) ("[A]ll debts, liabilities and duties of the other entity that has converted shall remain attached to the domestic limited liability company to which such other entity has converted, and may be enforced against it to the same extent as if said debts, liabilities and duties had originally been incurred or contracted by it in its capacity as a domestic limited liability company.").  Because Wellpartner, LLC, is now responsible for Wellpartner, Inc.'s liabilities, retaining Wellpartner, Inc., as a nominal party has no practical effect on this lawsuit.  *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 358-59 (3d Cir. 2013).

No court has apparently considered the effect that dismissing the converted entity "with prejudice" would have on the new entity's liability arising from pre-conversion conduct. However, dismissal "with prejudice" generally precludes a litigant from prosecuting the claims that are dismissed.  *See Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990) ("The phrases 'with prejudice' and 'on the merits' are synonymous terms, both of which invoke the doctrine of claim preclusion."); *cf. Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim.").

Plaintiff has alleged that Wellpartner, Inc., engaged in pre-conversion conduct relevant to its claims.  *See, e.g.*, Compl. ¶¶ 54-57.  Delaware law makes plain that Wellpartner, LLC, remains liable for Wellpartner, Inc.'s pre-conversion conduct.  While the ultimate effect of a dismissal "with prejudice" is admittedly unclear and uncertain in this context, Wellpartner, LLC, certainly should not be permitted to rely on its conversion to conveniently avoid the liabilities of

Wellpartner, Inc., that Delaware law so clearly preserves.  Accordingly, this Court can and should avoid any risk of uncertainty that Defendants are attempting to escape liability and reject their motion to dismiss Wellpartner, Inc., with prejudice.

## II.   THIS COURT HAS PERSONAL JURISDICTION OVER CVS HEALTH CORPORATION

Despite CVS Health's assertions to the contrary, this Court has personal jurisdiction over CVS Health for a number of reasons.  First, CVS Health has failed to satisfy (or even address) the appropriate framework for establishing personal jurisdiction as to Plaintiff's federal antitrust claim.  And because personal jurisdiction exists with respect to the antitrust claim, this Court can exercise pendent personal jurisdiction over Sentry's remaining claims.  But even without the doctrine of pendent personal jurisdiction, the allegations of the Complaint and the facts elaborated below sufficiently establish personal jurisdiction over CVS Health with respect to Sentry's remaining state-law claims.

### A.   CVS Health Is Subject to Personal Jurisdiction Based on Sentry's Antitrust Claim

In evaluating CVS Health's motion to dismiss for lack of personal jurisdiction, the Court must "first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).  "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Id.*  Similarly, when federal law serves as the basis for federal jurisdiction, the due process clause of the Fifth Amendment—not the Fourteenth Amendment— sets the constitutional limits of the Court's jurisdiction.  *Id.*

Due process requires that a nonresident defendant "purposefully establish[] minimum contacts" with the relevant forum and that the court's exercise of jurisdiction "not offend

3

traditional notions of fair play and substantial justice." *U.S. SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (quoting *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994)); *accord Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The Eleventh Circuit (and many other circuits) have concluded that when "the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process," the "applicable forum for minimum contacts purposes is the United States" as a whole, and not the individual state where the court sits.  *Carrillo*, 115 F.3d at 1543-44; *Republic of Panama*, 119 F.3d at 946 ("[A] defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis.").  The contacts element is therefore satisfied automatically "in the case of domestic defendants, who, through their choice of residence or incorporation, have purposefully directed their activities at the United States."  *See Republic of Panama*, 119 F.3d at 945 n.16.  Incorporation in the United States thus provides the basis for a court to exercise general jurisdiction under a nationwide service-of-process statute.  *See Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 760-61 (2014) (emphasizing that for purposes of general jurisdiction, a corporation is "at home in the forum" that is its place of incorporation or principal place of business); *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) ("Thus, we must find the basis of the district court's exercise of personal jurisdiction, if any, under the stricter standard of *general jurisdiction*, and must decide whether the Canadian defendants have had continuous and systematic general business contacts *with the United States* sufficient to subject them to the jurisdiction of its courts." (emphasis added)).

A defendant's contacts with the United States alone are not sufficient to support personal jurisdiction; considerations of "fairness and reasonableness" must also be satisfied.  *Republic of Panama*, 119 F.3d at 946-47.  The exercise of personal jurisdiction is fair and reasonable when

the federal interest involved in the litigation outweighs any burdens placed on the individual defendant. *See id.* However, a court need not engage in balancing these interests if the defendant fails to present a "compelling case" that the exercise of jurisdiction will impose a substantial and constitutionally significant burden on the defendant. *See id.* The Eleventh Circuit has emphasized that "only in highly unusual cases" will the burden and inconvenience of litigating in a federal court rise to a level of constitutional concern for defendants who reside in the United States. *Id.* at 947-48; *see also id.* at 948 ("The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will 'make litigation "so gravely difficult and inconvenient" that [he] unfairly is at a "severe disadvantage" in comparison to his opponent.'" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985))).

In its Complaint, Sentry alleges a federal antitrust claim (Count I) and, accordingly, grounds personal jurisdiction in Section 12 of the Clayton Act. Compl. ¶ 12. Section 12 of the Clayton Act authorizes nationwide service of process, and consequently nationwide personal jurisdiction, for any suit against a corporation under federal antitrust law.[2] *See* 15 U.S.C. § 22; *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1292 (N.D. Ala. 2016); *cf. BNSF Ry. Co. v. Tyrrell*, __ U.S. __, 137 S. Ct. 1549, 1555 (2017) ("Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." (citing 15 U.S.C. § 22)). Accordingly, because the Clayton Act authorizes nationwide service of process, the United States—and not the State of Florida—is the relevant forum for the Court's personal jurisdiction inquiry. *See Carrillo*, 115 F.3d at 1543-44.

---

[2]     Section 12 also includes a venue provision for antitrust claims. *See* 15 U.S.C. § 22. Defendants have not challenged venue and, by not doing so, have waived any objections to venue in this Court. *See* Fed. R. Civ. P. 12(h)(1).

CVS Health itself states that it is incorporated in Delaware and has its principal place of business in Rhode Island.  *See* Decl. of Thomas S. Moffatt [ECF No. 39-1] ("Moffatt Decl.") ¶ 5. In other words, CVS Health concedes that it is a domestic corporation incorporated in, conducting business in, and otherwise "at home" in the United States.  *See Daimler AG*, 134 S. Ct. at 760-61; *Republic of Panama*, 119 F.3d at 945 n.16; *Blue Cross*, 225 F. Supp. 3d at 1299. These contacts with the United States unquestionably support this Court's exercise of general personal jurisdiction over CVS Health.

In neither its motion nor the declaration attached to it has CVS Health claimed that litigating this case in Florida will impose any burden or inconvenience.  Nor could it.  CVS Health is a sophisticated corporation located on the east coast of the United States, whose principals and counsel can easily litigate a case in southern Florida.  *See Republic of Panama*, 119 F.3d at 947-48 (noting that "modern means of communication and transportation" lessen the burden of litigating in Florida for an east coast-based defendant and that a worldwide geographic scope for discovery was insufficiently inconvenient to defeat personal jurisdiction); *see also Blue Cross*, 225 F. Supp. 3d at 1300 (holding that defendants' regular conduct of significant business in the United States and a nationwide scope of discovery were not unconstitutionally inconvenient).  Just as the Eleventh Circuit held in *Republic of Panama*, "The fact that [CVS Health] may not have had significant contacts with Florida is insufficient to render Florida an unreasonably inconvenient forum."  *Id.*  Because CVS Health has not come forward with any "compelling" argument for why the exercise of jurisdiction in the Southern District of Florida would pose any inconvenience of a constitutionally significant scale, the Court need not balance Defendant's burden with the federal interests at stake.

But even if CVS Health could point to some plausibly significant inconvenience, courts have recognized that "the federal interest in enforcing antitrust laws [is] 'both familiar and substantial.'"  *See Blue Cross*, 225 F. Supp. 3d at 1300-01 (collecting cases and describing the "strong federal interest in antitrust enforcement").  This federal interest likely outweighs any generalized inconvenience that could be asserted by CVS Health.  Accordingly, given the foregoing, this Court's exercise of personal jurisdiction over CVS Health with respect to Sentry's antitrust claim comports with both federal law and due process under the Fifth Amendment.

**B.    This Court Has Pendent Personal Jurisdiction Over Sentry's Other Claims**

Beyond its antitrust claim, Sentry alleges eight other claims against Defendants, including CVS Health, arising under state and federal law.  *See* Compl. ¶¶ 79-139.  Because CVS Health is subject to personal jurisdiction in this Court for the antitrust claim, this Court may also exercise pendent personal jurisdiction over CVS Health for the remaining claims.

In this Circuit, if the district court has personal jurisdiction with respect to one claim, the "district court has personal jurisdiction *over the entire case* so long as the claims arose from the same jurisdiction generating event."  *Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009) (emphasis added); *Cronin v. Wash. Nat'l Ins. Co.*, 980 F.2d 663, 671 & n.10 (11th Cir. 1993); *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1341 (S.D. Fla. 2010) (if personal jurisdiction exists over one claim, pendent personal jurisdiction exists over all claims sharing a common nucleus of fact).  Other decisions from this District have invoked pendent personal jurisdiction when jurisdiction over one claim was based on a federal nationwide-service-of-process statute.  *See Prou v. Giarla*, 62 F. Supp. 3d 1365, 1372-73 (S.D. Fla. 2014); *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1374-75 (S.D. Fla. 2012); *see also Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004) ("Pendent personal jurisdiction is typically found where one or more federal claims

7

for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction.").

Sentry's other claims all arise from the same nucleus of fact that underlies its antitrust claim:  Defendants' misappropriation and misuse of Sentry's information in their attempts to force Sentry's customers to switch 340B administrators and the harm that Defendants' activities have caused Sentry.  Accordingly, this Court should exercise pendent personal jurisdiction over CVS Health for the non-antitrust claims in Sentry's complaint.

### C.   Personal Jurisdiction Over CVS Health Is Also Appropriate Under Florida's Long-Arm Statute

If this Court exercises personal jurisdiction based on the antitrust claim, as outlined above, it need not even address Florida's long-arm statute.  But alternatively, and independently of the Clayton Act's nationwide personal jurisdiction provision, CVS Health is subject to jurisdiction in this Court because there is no jurisdictionally significant distinction or separation between CVS Health and its subsidiary, Defendant CVS Pharmacy, Inc.  Whether viewed under an agency or alter-ego theory, CVS Pharmacy conducts business (and tortious activity) for the benefit of CVS Health.  Accordingly, CVS Health, through its connection to CVS Pharmacy, is subject to personal jurisdiction in Florida under the general and specific jurisdiction provisions of the long-arm statute.

The specific jurisdiction provision of Florida's long-arm statute provides:

> (1)(a)   A person, whether or not a citizen or resident of this state, who personally *or through an agent* does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1.   Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

> 2. Committing a tortious act within this state.
>
> . . . .

Fla. Stat. § 48.193(1) (emphasis added).  Likewise, the general jurisdiction provision specifies:

> (2)  A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2).

While in the ordinary case, neither provision subjects a parent corporation to personal jurisdiction in Florida based on the location or conduct of its subsidiaries in Florida, this rule does not apply when the subsidiary acts as the agent or alter ego of the parent.[3]  *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002); *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1289 (S.D. Fla. 2014).  In other words, jurisdiction over the parent is proper where the distinctions between the parent and subsidiary are merely formal, there is no

---

[3]    The Supreme Court's *Daimler* decision recently cabined the extent to which traditional agency principles could be invoked to gain personal jurisdiction over a parent through its subsidiary.  *See Daimler*, 134 S. Ct. at 758-60.  In doing so, the Court rejected the Ninth Circuit's "less rigorous" agency test, as "stack[ing] the deck" in favor of always finding jurisdiction over a parent corporation.  *Id.* at 759.  The Court observed without disapproval, though, that other circuits have held "that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego."  *Id.*  And, importantly, the Court noted that the plaintiffs in *Daimler* never contended that the subsidiary was the dominated alter ego of the parent.  *Id.* at 758.  Nor did the *Daimler* decision reach issues of specific jurisdiction based on agency principals.

The *Daimler* Court did not reject (or even decide) whether an "enhanced" agency relationship approaching the dimensions of alter-ego status could establish general or specific personal jurisdiction over a parent corporation.  Although the Eleventh Circuit's *Meier* decision speaks in "agency" terms, it is clearly applying a test more rigorous than the one employed by the Ninth Circuit by requiring a unity of identity between the parent and subsidiary.  *See Meier*, 288 F.3d at 1273 ("[T]he evidence submitted strongly suggests that the Florida subsidiaries were mere instrumentalities of the [foreign parents]." (emphasis added)).  Accordingly, the Supreme Court's *Daimler* decision does not preclude exercising personal jurisdiction over CVS Health based on its agent-cum-alter ego CVS Pharmacy.

semblance of individual identity, and the subsidiary "manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation." *See Meier*, 288 F.3d at 1272-73 (quoting *State v. Am. Tobacco Co.*, 707 So. 2d 851, 855 (Fla. 4th DCA 1998)); *Peruyero*, 83 F. Supp. 3d at 1289 ("A court may properly assume personal jurisdiction over a corporate parent if the plaintiff can show that the subsidiary is an alter ego of a parent corporation, such that the corporate veil can be pierced. In order for a court to pierce the corporate veil, a plaintiff must show: (1) that the subsidiary is a mere instrumentality of the parent; and (2) improper conduct." (quoting *Cross Country Home Servs., Inc. v. Home Serv. USA Corp.*, No. 08-61456, 2010 WL 55439, at *3 (S.D. Fla. Jan. 6, 2010))).

Defendants do not contest that this Court has personal jurisdiction over CVS Pharmacy, either generally or specifically. Thus Sentry need only demonstrate that CVS Pharmacy operates as CVS Health's instrumentality to establish personal jurisdiction.

CVS Health relies solely on the declaration of Thomas Moffatt to support its assertion that it is a formally "separate and distinct" holding company that exists almost exclusively to "issue stock that is traded on the New York Stock Exchange and to file reports with the Securities and Exchange Commission." Moffat Decl. ¶¶ 4, 7. Moffat further claims that CVS Health "has no operations unrelated to its status as a holding company," *id.* ¶ 4, "has no direct involvement in directing, managing, or supervising the operations or employees of . . . CVS Pharmacy, Inc.," *id.* ¶ 6, and has "its own senior management" and "its own board of directors," *id.* ¶ 7.

10

Although Sentry has not yet completed jurisdictional discovery, certain publicly available information[4] casts serious doubt on Moffatt's description, instead showing irrefutably that CVS Pharmacy exists solely to achieve the financial goals of CVS Health. For starters, counter to Moffatt's assertions, both entities have overlapping executives and directors—including Moffatt himself. CVS Pharmacy's corporate filings with the State of Rhode Island list Moffatt as Vice President, Secretary, and Director, and list Carol A. Denale as Treasurer and Director of CVS Pharmacy. (A copy of the Rhode Island Secretary of State's summary is attached as Exhibit A). CVS Health's corporate website, though, lists Denale and Moffatt as officers of CVS Health (as Senior Vice President/Treasurer and as Vice President/Assistant Secretary/Assistant General Counsel, respectively). (A printed copy of the webpage[5] is attached as Exhibit B). Sharing common directors and officers is often a tell-tale indicator of alter ego status. *See LIG Ins. Co. v. Inter-Florida Container Transp., Inc.*, 564 F. App'x 495, 495 (11th Cir. 2014); *United Steelworkers of Am. v. Connors Steel Co.*, 855 F.2d 1499, 1505-06 (11th Cir. 1988).

Additionally, the most recent Form 10-K filed by CVS Health with the Securities and Exchange Commission—the filing of which is one of CVS Health's allegedly sole functions—

---

[4]     Because CVS Health has challenged personal jurisdiction via declaration, the Court may consider the exhibits Plaintiff has attached to this response. *See Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) ("If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996))). The Court may take judicial notice of this publicly filed information, including those documents filed with the Securities and Exchange Commission and state authorities, at the motion to dismiss stage. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277-81 (11th Cir. 1999); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07–61542–CIV, 2010 WL 6397500, at *2 & n.5 (S.D. Fla. Aug. 18, 2010) (taking judicial notice of a Form 10-K to determine cash flow parent received from subsidiary); *Abedi v. US Bank Nat'l Ass'n*, No. 1:16-CV-1747-SCJ, 2017 WL 4865459, at *3 (N.D. Ga. Oct. 2, 2017) (taking judicial notice of state corporate records to determine identity of corporate officer).

[5]     The website can also be accessed at http://investors.cvshealth.com/corporate-governance/officers.

belies any notion that the operations and fortunes of the two CVS entities are separate.
According to that filing (attached as Exhibit C), CVS Health views itself, together with its
subsidiaries, as a single "Company" championing pharmacy innovations and "helping people on
their path to health." Ex. C. at 3. A far cry from a holding company with "no operations
unrelated to its status as a holding company," CVS Health holds itself out to the United States
Government and investors as "the only integrated pharmacy health care company with the ability
to impact consumers, payors, and providers with innovative, channel-agnostic solutions." *Id.*

The Form 10-K is replete with other facts and statements demonstrating that CVS
controls, supervises, and receives pecuniary benefit from the operations of CVS Pharmacy and
its other subsidiaries. Highlights include:

- CVS Health reports that it is **not** a "shell company" as defined in Rule 12b-2 of
  the Exchange Act, 17 C.F.R. § 240.12b-2. *Id.* at 1.

- CVS Health reports that it owns or leases over 891 retail stores, pharmacies, or
  distribution centers in the State of Florida. *Id.* at 33, 35.

- CVS Health reports for 2017 over $184 billion in operations revenue and over $6
  billion in net income for 2017. *Id.* at 39.

- CVS Health reports for 2017 over $130 billion in net revenue from Pharmacy
  Services and over $79 billion in net revenue from Retail/Long-Term-Care
  operations, in contrast with its "Corporate Segment" which had no revenue but
  only $966 million in operating losses. *Id.* at 56 (Ex. 13 to Form 10-K, pg. 6).

Finally, as evidenced by Exhibit F to Sentry's Complaint [ECF No. 1-11], CVS Health
sent a notice to many of Sentry's customers, including some in Florida, notifying them of CVS
Health's acquisition of Wellpartner and its plan to implement Wellpartner as its "exclusive 340B

program administrator."  Compl. ¶ 58 & Ex. F.  Despite CVS Health's attempt to obfuscate the issue by discussing the ♥CVSHealth *trademark*, the text of the notice indicates it is being written by CVS Health *the entity*.  (Common sense dictates that trademarks do not acquire companies.) Moreover, the copyright notice on the document clearly describes "CVS Health" as *the owner* of the copyright.  *See* 17 U.S.C. § 401(b)(3) (specifying that a copyright notice "shall" identify the owner).  But even if Defendants are correct that Exhibit F represents CVS Pharmacy's describing itself as "CVS Health," that fact underscores rather than refutes that the identities of the two corporations are essentially interchangeable.[6]

Taken together, these facts more than refute the notion that CVS Health is merely a holding company with no connection to CVS Pharmacy's business operations.  These entities are functionally one in the same.  The clearly established financial ties between them provides evidence that CVS Pharmacy is merely the "instrumentality" of CVS Health through which CVS Health conducts its business in Florida and achieves its financial purposes.  *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1362 (11th Cir. 2006); *Meier*, 288 F.3d at 1272-74.

CVS Health relies on two out-of-circuit district court decisions declining to exercise personal jurisdiction over it based on its relationship with CVS Pharmacy.  ECF No. 39 at 7 n.5 (citing *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817 (D.S.C. 2015) and *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016)).  Both are distinguishable in several respects.  First, neither case involved a federal antitrust claim conferring nationwide personal

---

[6]     If in fact CVS Health Corporation itself sent Exhibit F into Florida, that evidence of wrongfully anticompetitive conduct alone supports the exercise of specific jurisdiction over CVS Health without regard to any alter ego relationship.  *See* Fla. Stat. § 48.193(1)(a)(2); *Carillo*, 115 F.3d at 1546 ("It has also long been held that direct mailings of solicitation materials to the forum may provide a basis for personal jurisdiction.").

13

jurisdiction, and are inapposite on that basis alone.  *See Callum*, 137 F. Supp. 3d at 832;

*Corcoran*, 169 F. Supp. 3d at 975-76.  *Callum* is further distinguishable in that the Plaintiff did

not raise, and the court did not consider any alter ego argument.  *See Callum*, 137 F. Supp. 3d at

834-37.  And while *Corcoran* did consider an alter ego argument, it essentially required the

plaintiff in that case to produce evidence satisfying every factor of the Ninth Circuit's alter-ego

test.  *See Corcoran*, 169 F. Supp. 3d at 983-84.  The case law is clear in this Circuit, however,

that a party need not produce evidence as to every factor to prove alter ego status.  *See United*

*Steelworkers*, 855 F.2d at 1505-06.  In any event, the *Corcoran* decision is not binding, and this

Court should consider the evidence anew (including, possibly, evidence developed during

jurisdictional discovery on the alter ego question).

### D.    Alternatively, the Court Should Permit Sentry to Supplement Its Response With Jurisdictional Discovery

Although Sentry maintains that it has sufficiently established the Court's personal

jurisdiction with respect to CVS Health under either an antitrust or alter ego rationale, Sentry

respectfully requests that it be permitted to supplement Part II.C of this opposition brief after it

completes jurisdictional discovery.  In response to CVS Health's jurisdictional arguments, Sentry

is serving jurisdictional discovery that it anticipates will underscore the degree to which CVS

Pharmacy is merely the alter ego of CVS Health.  To the extent the facts outlined above and the

exhibits attached to this response demonstrate at the very least a genuine dispute over the

character and extent of CVS Health's operations as simply a "holding company," discovery is

essential to resolve that dispute.  *See ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337,

1340-41 (11th Cir. 2017) (holding that "a district court abuses its discretion if it completely

denies a party jurisdictional discovery" when jurisdictional facts are genuinely in dispute);

*United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009) (admonishing a party for

failing to seek "a deferral of a ruling pending discovery" on jurisdiction); *Eaton v. Dorchester Dev. Inc.*, 692 F.2d 727, 729-31 & n.7 (11th Cir. 1982) (recognizing a plaintiff's "qualified right" in this Circuit to jurisdictional discovery when jurisdictional facts are genuinely in dispute); *Bernadele v. Bonorino*, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009) (same).

## III.   CVS HEALTH'S RULE 8 ARGUMENT IS MERITLESS

In a cursory argument at the end of its motion, CVS Health seeks dismissal of the claims against it because is asserts (not entirely accurately[7]) that Sentry did not make "any allegations specific to CVS Health." ECF No. 39 at 9.  The argument is particularly curious given that CVS Health lumps itself together with CVS Pharmacy and its other subsidiaries in its own Form 10-K. Ex. C at 1.  Nevertheless, the argument is legally meritless.  Because CVS Health and CVS Pharmacy are essentially and functionally the same entity, they are both liable for the same course of conduct.  In other words, Sentry's allegations apply equally against both entities.  *See Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.").

## <u>REQUEST FOR HEARING</u>

Pursuant to Local Rule 7.1(b), Sentry respectfully requests a hearing on Defendants' Motion to Dismiss Plaintiff's Claims as to CVS Health and Wellpartner, Inc. Due to the important jurisdictional issues raised by Defendants' motion and Sentry's response, Sentry believes the Court would benefit from the opportunity to hear argument and pose questions. Sentry anticipates a hearing on this motion should require no more than 30 minutes.

---

[7]     As noted above, Sentry alleges that CVS Health is responsible for sending to Sentry's customers the "CVS Announcement" attached as Exhibit F to the Complaint.  Compl. ¶ 58 & Ex. F.

## CONCLUSION

For the reasons stated above, this Court should deny Defendants' motion to dismiss Wellpartner, Inc., and CVS Health Corporation from this lawsuit on jurisdictional grounds.

Date: March 27, 2018                    Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Christopher G. Renner*

      Stephen N. Zack, Esq.
      Florida Bar No. 145215
      100 SE Second Street, Suite 2800
      Miami, Florida 33131
      Telephone: (305) 539-8400
      Facsimile: (305) 539-1307
      Email: szack@bsfllp.com

      Carl E. Goldfarb, Esq.
      Florida Bar No. 125891
      Brendon M. Olson, Esq.
      Florida Bar No. 1000384
      401 East Las Olas Boulevard, Suite 1200
      Fort Lauderdale, Florida 33301
      Telephone: (954) 356-0011
      Facsimile: (954) 356-0022
      Email: cgoldfarb@bsfllp.com
      Email: bolson@bsfllp.com

      Christopher G. Renner, Esq.
      (*pro hac vice*)
      1401 New York Ave., NW
      Washington, DC 20005
      Telephone: (202) 237-2727
      Facsimile: (202) 237-6131
      Email: crenner@bsfllp.com

      *Counsel for Plaintiff Sentry Data Systems, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 27, 2018, a true and correct copy of the foregoing

document was electronically filed with the Clerk of the Court using the CM/ECF system, which

will send a notice of electronic filing to all counsel of record.


By:  <u>/s/ *Christopher G. Renner*</u>
      Christopher G. Renner, Esq.