## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 18-CV-60257-BLOOM/VALLE

SENTRY DATA SYSTEMS, INC.,

        Plaintiff,

v.

CVS PHARMACY, INC., and
WELLPARTNER, LLC,

        Defendants.

                               /

### DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES
### FROM PLAINTIFF SENTRY DATA SYSTEMS, INC.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 26.1(g)(2),

Defendants CVS Pharmacy, Inc. ("CVS") and Wellpartner, LLC ("Wellpartner") (collectively,

"Defendants"), respectfully request an order (1) compelling Plaintiff Sentry Data Systems, Inc.

("Sentry") to serve a complete response to Interrogatory No. 10 of CVS Pharmacy Inc.'s First

Set of Interrogatories; and (2) deeming that Sentry has admitted Request Nos. 6, 7, 9, 28, and 29

of Defendants' First Requests for Admissions or, in the alternative, requiring Sentry to provide

complete and non-evasive responses to such Requests.

### MEMORANDUM OF LAW

### I.  FACTUAL BACKGROUND

The parties to this lawsuit are service providers for the 340B Drug Pricing Program, a

federal program that allows certain healthcare providers ("covered entities") to purchase

prescription drugs at a discount and use the savings to treat underserved populations.  Covered

entities often contract with (1) pharmacies ("contract pharmacies") to dispense 340B drugs, and (2) 340B administrators to provide services such as determining which prescriptions are 340B-eligible, ordering 340B drugs for delivery to contract pharmacies, and distributing 340B proceeds and fees among the covered entity, contract pharmacy, and 340B administrator.

Plaintiff Sentry is a 340B administrator.  Defendant Wellpartner is a competing 340B administrator.  Defendant CVS is a pharmacy business.  A small percentage of CVS's pharmacy locations serve as 340B contract pharmacies.  On July 9, 2014, CVS entered into a 340B Platform Agreement to use Sentry's "Backbone" product, a technology platform that was supposed to enable CVS to provide contract pharmacy services to covered entities working with a range of different 340B administrators.  Sentry's Backbone, however, was a bust.  After three years, only one 340B administrator was ever able to go live with CVS on Sentry's Backbone.

In November 2017, CVS took its 340B business in a new direction by acquiring Wellpartner.  Thereafter, Defendants began offering 340B administration and contract pharmacy services on an integrated basis.  This new integrated solution, which offers many benefits to covered entities, applies only to CVS pharmacy locations.  Thus, covered entities remain free to obtain contract pharmacy services from other pharmacies (*e.g.*, Walgreens, Rite Aid, Wal-Mart, Kroger) and to use other 340B administrators in connection with other pharmacies.

## II.    PROCEDURAL HISTORY

Threatened by Defendants' new integrated offering, Sentry filed suit alleging that Defendants are unlawfully forcing covered entities to use Wellpartner for CVS pharmacies and that Defendants have tortiously interfered with Sentry's contracts with covered entities and misappropriated Sentry's trade secrets.  Sentry asserted nine causes of action:  unlawful tying in violation of Section 1 of the Sherman Act (Count I); violation of Florida's Deceptive and Unfair Trade Practices Act (Count II); breach of contract (Count III); tortious interference with contract

(Count IV) and business relationships (Count V); misappropriation of trade secrets (Counts VI-VII); conversion of confidential information (Count VIII); and unfair competition (Count IX).

By Order dated August 28, 2018, the Court granted in part Defendants' motion to dismiss. DE 115. The Court dismissed without prejudice Sentry's antitrust tying claim for failure to define the relevant geographic market(s) in which CVS allegedly possesses market power. In addition, the Court dismissed with prejudice Sentry's claims for violation of Florida's Deceptive and Unfair Trade Practices Act, conversion, and unfair competition on the grounds that those claims are preempted by the Florida Uniform Trade Secrets Act. The Court allowed the remaining claims to go forward and granted Sentry leave to replead its antitrust tying claim. On September 10, 2018, Plaintiff filed its Amended Complaint. Defendants will be filing a motion to dismiss the antitrust tying and tortious interference claims in the Amended Complaint.

## III.    DEFENDANTS' DISCOVERY REQUESTS

On July 13, 2018, Sentry served responses to: (1) CVS's First Set of Interrogatories; (2) Defendants' First Request for Production of Documents; and (3) Defendants' First Requests for Admissions. Defendants raised numerous concerns regarding Sentry's responses, and the parties thereafter exchanged multiple letters and held multiple lengthy telephonic conferences in an effort to resolve and narrow their discovery disputes. While the parties were able to resolve many disputes, and Sentry has agreed to supplement many responses and withdraw various objections, Defendants seek the Court's intervention with respect to the unresolved issues below.

## IV.     ARGUMENT

The Court should compel Sentry to provide a complete response to Interrogatory No. 10 and should enter an order deeming Sentry to have admitted RFA Nos. 6, 7, 9, 28, and 29 or, in the alternative, requiring Sentry to provide complete responses to such Requests.

### A.     Interrogatory No. 10

Defendants asked Sentry to "identify the amount of damages you claim you are entitled to recover for each cause of action you allege and describe how such damages have been calculated, including any methodologies or formulas used in calculating such damages." Sentry objected to this interrogatory "on the basis that it is premature and calls for the non-reciprocal disclosure of expert opinion." In addition, Sentry responded that its "damages include lost profits and lost goodwill" and that it "will serve expert disclosures regarding its damages as required under the Scheduling Order."[1]

Sentry's response is woefully deficient because it fails to provide any amount or calculation of damages. Sentry's objections that this interrogatory is "premature" and that Defendants must wait until "expert disclosures" to obtain damages information are without merit. Sentry should have already provided such information months ago in connection with its

---

[1]     In full, Interrogatory No. 10 asked:

> If you contend that you are entitled to recover monetary damages in the Action, identify the amount of damages you claim you are entitled to recover for each cause of action you allege and describe how such damages have been calculated, including any methodologies or formulas used in calculating such damages.

In full, Plaintiff responded to Interrogatory No. 10 as follows:

> Sentry objects to CVS Interrogatory 10 on the basis that it is premature and calls for the non-reciprocal disclosure of expert opinion. Sentry's damages include lost profits and lost goodwill. Sentry will serve expert disclosures regarding its damages as required under the Scheduling Order.

initial disclosures.  Specifically, Rule 26 required Sentry to provide "a computation of each category of damages."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Rather than complying with this obligation, Sentry's initial disclosures merely state that Sentry "believe[s] its damages exceed $500 million" without saying how it arrived at that outlandish amount or providing any computations.  *See* Exhibit A at 11–12.[2]  Now, Sentry provides even *less information* in its interrogatory response, identifying only general types of damages (lost profits and goodwill) with no amounts or calculations.

Courts have rejected similar attempts to evade providing damages information.  In *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, the court ordered the plaintiff to respond to an interrogatory asking it to itemize damages.  230 F.R.D. 682, 685 (M.D. Fla. 2005).  The court explained that "[i]t is no answer for plaintiffs to assert that they will need discovery or to consult with an expert to determine their losses."  *Id.* (internal citation and quotation marks omitted). "The fact that [a plaintiff] may later supplement its interrogatory answers with an expert report does not permit it to refuse to respond with whatever discoverable information it now holds."  *Id.*

Likewise, in *Boldstar Tech., LLC v. Home Depot USA, Inc.*, this Court compelled the plaintiff to answer an interrogatory seeking information about the type and amount of damages and the methodology used to calculate such damages.  No. 07-80435-CIV, 2008 WL 11320010, at *1 (S.D. Fla. Feb. 28, 2008).  The Court rejected the plaintiff's argument that the interrogatory was premature and pointed out that the plaintiff was required "to make a computation of each category of damages claimed as part of its initial disclosures."  *Id.* at *2.  The Court found that the plaintiff was "in the best position to calculate its damages from its own internal financial

---

[2]      Exhibit A contains the relevant excerpts from Sentry's Rule 26 Initial Disclosures.

information" and was under a duty to supplement "[s]hould [its] initial damages calculation change based upon further review of documents." *Id.* at \*3.

This Court has on numerous other occasions similarly compelled responses on the subject of damages. *See, e.g.*, *Azure LLC v. Figueras Seating U.S.A., Inc.*, No. 12-23670-CV, 2014 WL 12512542, at \*1 (S.D. Fla. Jan. 10, 2014) (ordering plaintiff to provide information regarding amount and calculation of "each category of damages"); *Rodriguez v. SMI Sec. Mgmt.*, Inc., No. 09-21671-CIV, 2009 WL 4893161, at \*5 (S.D. Fla. Dec. 10, 2009) (ordering plaintiff to provide "specific damage calculations for all damages"); *Stone v. Zimmer, Inc.*, No. 09-80252-CIV, 2009 WL 9567924, at \*4 (S.D. Fla. Dec. 4, 2009) (rejecting argument that interrogatory that "asks [p]laintiffs to identify their lost income . . . seeks an expert opinion on damages" and directing plaintiffs "to provide the information sought"). Accordingly, Sentry should be ordered to provide a complete response to Interrogatory No. 10 that sets forth the amount and calculation of each category of damages that Sentry is seeking to recover in this action.

**B.        Requests For Admission Nos. 6, 7, 9, 28, and 29**

The purpose of requests for admission "is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *Old Reliable Wholesale, Inc. v. Cornell Corp.* 2008 WL 2323777, at \*1 (N.D. Ohio. June 4, 2008) (internal citation and quotation marks omitted). Under Rule 36 of the Federal Rules of Civil Procedure ("Rule 36"), "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Moreover, a "denial must fairly respond to the substance of the matter." *Id.* "The party responding to a request for admission should not provide an evasive answer." *Building Materials Corp. of Am. v. Henkel Corp.*, 2016 WL 7666166, at \*4 (M.D. Fla. Mar. 14, 2016). "Efforts to circumvent the purpose of Rule 36(a) through evasive denials or incomplete responses to admissions frustrates

6

judicial economy and may result in Rule 37 sanctions." *Old Reliable*, 2008 WL 2323777 at *1.

Moreover, when an answer does not comply with Rule 36, a court may order that the matter is

admitted.  Fed. R. Civ. P. 36(a)(6); *see also Obesity Research Institute, LLC v. Fiber Research

Int'l, LLC*, 2017 WL 2705426 (S.D. Cal. June 23, 2017) ("An evasive denial, one that does not

specifically deny the matter . . . may be deemed an admission.") (internal citation and quotation

marks omitted).

Sentry has provided several evasive responses.  Those matters should be deemed

admitted, or in the alternative, Sentry should be ordered to provide non-evasive responses.

**Request for Admission Nos. 6 and 7:**  RFA No. 6 asked Sentry to admit that "[d]uring

the time that CVS was using Sentry's Backbone product Backbone had bugs."  RFA No. 7 asked

Sentry to admit that "[d]uring the time that CVS was using Sentry's Backbone product,

Backbone had bugs that Sentry attempted to fix with mixed success."  Sentry provided the same

response to both requests:  "Admitted that CVS had some criticism of Backbone and wanted

Sentry to make some modifications in Backbone, both of which are typically the case with any

new software product and that Sentry continued to make modifications to Backbone at the

request of CVS until Sentry terminated the Backbone contract; otherwise denied."

Sentry's response is evasive and does not fairly respond to the substance of the requests.

Defendants did not ask whether CVS had "criticism of Backbone" or "wanted Sentry to make

some modifications in Backbone."  Rather, they asked Sentry to admit that "Backbone had bugs"

and that Sentry had "mixed success" trying to fix those bugs.  Sentry's tactic of answering a

different request than what was actually posed is improper.  *See, e.g.*, *Obesity Research*, 2017

WL 2705426, at *2 (deeming request admitted where party was asked to admit that it intended to

influence customers to purchase a product with certain advertising claims and the party instead

"responded with a general statement about advertising"); *Building Materials.*, 2016 WL 7666166, at *4 (deeming request admitted where plaintiff provided "evasive answer" that did not respond to the "question posed").

Whether Sentry's Backbone product had bugs and Sentry's ability to resolve those bugs affected Sentry's performance of its obligations under the 340B Platform Agreement and thus is relevant to Sentry's claim that CVS breached the 340B Platform Agreement.  Moreover, Sentry used similar terminology when describing Backbone in its own Amended Complaint.  *See* Am. Compl. ¶ 101 ("Sentry expended significant time and money in attempting to *debug* and rework these custom features for CVS") (emphasis added).  In light of Sentry's evasive responses, the Court should order these RFAs admitted or require Sentry to respond to the questions posed.

**Request for Admission No. 9:**  RFA No. 9 asked Sentry to admit that "[s]ince the issuance of the CVS Announcement [of the Wellpartner acquisition], Plaintiff has issued negative Public Statements regarding Defendants."  Sentry responded as follows: "Sentry objects to this request as vague because the word 'negative' is imprecise and undefined and can have a wide range of meanings.  Subject to and notwithstanding that objection, admitted that Plaintiff has issued Public Statements regarding Defendants since the issuance of the CVS Announcement that were truthful, matters of opinion, or both."

Defendants did not ask whether Sentry made public statements that were "truthful, matters of opinion, or both."  They asked whether Sentry made "negative" public statements.  In response to CVS's Interrogatory No. 8, Sentry listed numerous public statements that it made regarding Defendants on social media.  Those statements include, for example, the following tweet from February 23, 2018:

> When the fox guards the henhouse" @CVShealth pays itself more than local
> pharmacies in Arkansas http://bit.ly/2CEGq3R  Now they're trying to restrict choice

for #340B hospitals http://bit.ly/2omnd2y  @HelenaBFoulkes @AlanLotvin
@AGRutledge @RepRickCrawford #BehindtheRxcurtain."

This statement, and others like it, are plainly "negative" under any reasonable understanding of

the term.  Again, because Sentry has evaded answering, this RFA should be deemed admitted, or

at a minimum, Sentry should be compelled to provide a proper response.

**Requests for Admission Nos. 28 and 29:**  RFA No. 28 asked Sentry to admit that "CVS

has fewer Contract Pharmacy locations than Walgreens."  RFA No. 29 asked Sentry to admit that

"CVS serves as the Contract Pharmacy for fewer Covered Entities than Walgreens."  Sentry

provided the same response to both:  "Admitted that in its complaint, Sentry alleges: 'Although

Walgreens is the single largest contract pharmacy, it is among the slowest growing of the major

contract pharmacy chains, increasing its number of contract pharmacy locations by just 19

percent since 2013. CVS, the second largest contract pharmacy, has increased its contract

pharmacy locations by 281 percent over the same period.'"

These RFAs are relevant to Sentry's claims that CVS has market power in the 340B

contract pharmacy market and is using that power to force covered entities to use Wellpartner for

340B administration services for CVS contract pharmacies.  The fact that Walgreens—a

competitor—has a greater market share undercuts Sentry's theory that CVS possesses the

necessary market power to force unwanted 340B administration services on covered entities.

Sentry's response is evasive because it fails to admit or deny the underlying facts, *i.e.*, that "CVS

has fewer Contract Pharmacy locations than Walgreens" and that "CVS serves as the Contract

Pharmacy for fewer Covered Entities than Walgreens."  Instead, Sentry admits only that it made

certain allegations regarding Walgreens in its Complaint.  Defendants did not ask Sentry to admit

the contents of its Complaint, and such a response is improper.  *See Old Reliable*, 2008 WL

2323777, at \*2 (holding that party's attempt to admit what a document stated regarding a

product, rather than the underlying facts regarding the product, failed to comply with Rule 36).

**Certificate of Good Faith Conference; Conferred but unable to resolve Issues Presented in Motion**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred

with all parties who may be affected by the relief sought in this motion and in a good faith effort

to resolve the issues but have been unable to resolve the issues.

Dated:  September 24, 2018.

<div style="margin-left:40%">

**KOZYAK TROPIN THROCKMORTON LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Miami, FL 33134
Tel:  (305) 372-1800
Fax:  (305) 372-3508

By: /s/ *Gail A. McQuilkin*
      Gail A. McQuilkin, Esq.
      Florida Bar No. 969338
      Harley S. Tropin, Esq.
      Florida Bar No. 241253

**DECHERT LLP**

Michael S. Doluisio
Stuart T. Steinberg
2929 Arch St.
Philadelphia, PA 19104

Michael G. Cowie
1900 K Street, NW
Washington, D.C. 20006

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this September 24, 2018, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record via transmission of Notices of Electronic Filing

generated by CM/ECF.

By: /s/ *Gail A. McQuilkin*

11