UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-60257-BLOOM-Valle

SENTRY DATA SYSTEMS, INC.,

    Plaintiff,

v.

CVS PHARMACY, INC.,
and WELLPARTNER, LLC,

    Defendants.
_____/

**PLAINTIFF SENTRY DATA SYSTEMS, INC.'S RESPONSE TO DEFENDANTS'
MOTION TO COMPEL DISCOVERY RESPONSES**

**BOIES SCHILLER FLEXNER LLP**

Stephen N. Zack, Esq.
100 SE Second Street, Suite 2800
Miami, Florida  33131
Telephone:  (305) 539-8400
Facsimile:   (305) 539-1307
Email:  szack@bsfllp.com

Carl E. Goldfarb, Esq.
Travis Robert-Ritter, Esq.
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022
Email: cgoldfarb@bsfllp.com
Email: tritter@bsfllp.com

Christopher G. Renner, Esq.
(pro hac vice)
1401 New York Ave., NW
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: crenner@bsfllp.com

*Counsel for Plaintiff Sentry Data Systems, Inc.*

# INTRODUCTION

Defendants' motion (D.E. 126) to compel Sentry to provide more "complete" answers to one interrogatory and five requests for admissions should be denied in full. Sentry's interrogatory response is sufficient at this early stage of the litigation and Defendants' attempt to compel a further response should be denied as premature expert discovery. Defendants' RFAs use ambiguous and pejorative language or concern facts plainly outside of Sentry's knowledge, and so Sentry's responses are more than sufficient.

# BACKGROUND

This case concerns CVS and Wellpartner's illegal tying scheme, tortious interference with Sentry's contracts, and misappropriation of Sentry's trade secrets. CVS, a dominant player in the 340B contract pharmacy market, used its market power in that market to force customers to buy overpriced 340B administrator services from Wellpartner, its wholly-owned subsidiary, or else lose access to its "must have" contract pharmacies.

# ARGUMENT

### A.     Sentry's Response to CVS's Interrogatory No. 10 Was Proper

CVS challenges Sentry's response to Interrogatory No. 10. As demonstrated below, Sentry's response was reasonable and appropriate under the circumstances of this case, and the motion to compel should be denied for multiple, independent reasons.

CVS Interrogatory No. 10 and Sentry's full response, reads:

**CVS Interrogatory Number 10:**
If you contend that you are entitled to recover money damages in this Action, identify the amount you claim you are entitled to recover for each cause of action you allege and describe how such damages have been calculated including any methodologies or formulas used in calculating such damages.

**Sentry's Response to Interrogatory Number 10**

1

>Sentry objects to Interrogatory 10 on the basis that it is premature and calls for the non-reciprocal disclosure of expert opinion. Sentry's damages include lost profits and lost goodwill. Sentry will serve expert disclosures regarding its damages as required under the Scheduling Order.

Tellingly, Defendants did not challenge Sentry's Rule 26 disclosures. Sentry has an obligation under Rule 26 to update its Rule 26 disclosures, and it will do so by updating its response to Interrogatory No. 10 before the close of fact discovery. Sentry has already provided a wealth of factual materials relating to the calculation of damages, including through interrogatory responses regarding customer accounts lost as a result of Defendants' conduct, and about Defendants' market power. *See* Sentry's CVS's Interrogatory No. 5 (listing customers that terminated or decided not to renew a customer relationship with Sentry, in whole or part, because of Defendants' wrongful conduct); *see also* Sentry's Response to CVS's Interrogatories Nos. 12-14 (providing information about Defendants' market power). Sentry has further agreed to produce, pursuant to Defendants' requests for production, Sentry's financial statements and documents showing revenues and profits.

At this stage of this litigation, defendants are entitled at most to a general description of the types of damages Sentry contends it suffered (in addition to the documents that Sentry has already agreed to provide). In *Robert Bosch LLC v. Snap-On Inc.*, 2013 WL 1703328, at *4 (E.D. Mich. Apr. 19, 2013), for example, the court denied a motion to compel an answer to an interrogatory beyond a description of the two types of damages the plaintiff was seeking (reasonable royalty and lost profits), noting that "the precise details of those theories should be reserved for expert discovery." Similarly, in *Milwaukee Elec. Tool Corp. v. Chervon N. Am. Inc.*, 2017 WL 2445845 (E.D. Wis. June 6, 2017), the court noted that a damages interrogatory would be sufficient where it provided "a 'general theory of damages' and 'documents demonstrating' those damages," even without "the exact damages formula" (which required

2

expert testimony). *Id.* at *7 (citing *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2004 WL 2108410, at *2 (N.D. Ill. Sept. 21, 2004)). Sentry's interrogatory response provides such an adequate description, stating Sentry's damages will consist of "lost profits and lost goodwill."

On its antitrust claim, Sentry is entitled to both lost goodwill and lost profits as damages. As Judge Marcus explained, an antitrust plaintiff "may recover both lost past profits for [a Defendant's] unlawful conduct and damages for the resulting diminution in its going concern value." *Consol. Gas Co. of Fla. v. City Gas Co. of Fla.*, 665 F. Supp. 1493, 1544 (S.D. Fla. 1987);[1] *accord Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 175 F.3d 18, 27 (1st Cir. 1999) ("The principle that an antitrust plaintiff may recover both actual lost profits and diminution in the value of its business is well established.").[2] Damages for lost profits and goodwill are also recoverable under Sentry's tortious interference and misappropriation claims. *See Green Lumens LLC v. Green Lumens NE LLC*, 2016 WL 8808767, at *3 (S.D. Fla. Aug. 25, 2016) (finding plaintiff stated a claim for tortious interference where it alleged "damages in the form of lost profits and injury to its business reputation and goodwill"); *Aljassim v. S.S. S. Star*, 323 F. Supp. 918, 928 (S.D.N.Y. 1971) (awarding "for injury to business reputation and loss of good will" for tortious interference claim); Malla Pollack, 127 Am. Jur. Trials 283 (Originally published in 2012) ("The damages award [in a UTSA claim] may be calculated in any reasonable

---

[1] That decision was affirmed twice by the Eleventh Circuit and subsequently vacated after settlement by the parties. 931 F.2d 710.
[2] A plaintiff driven out of business cannot recover both loss of going concern value and future profits because those are duplicative. *Albrecht v. Herald Co.*, 452 F.2d 124, 131 (8th Cir. 1971).

manner, including the plaintiff's lost profits, the plaintiff's lost goodwill, the defendant's profits . . . and a combination of these.").[3]

It is inappropriate to require a more detailed response when discovery is at an early stage because measuring lost goodwill and lost profits requires expert analysis. Calculating goodwill regularly turns on expert testimony. *See Deseret Mgmt. Corp. v. United States*, 112 Fed. Cl. 438, 453 (2013) ("On this [goodwill] valuation point, both parties rely heavily on expert opinions."); *Discrete Wireless, Inc. v. Coleman Techs., Inc.*, No. 1:06-CV-00554-GET, 2008 WL 6898503, at *6 (N.D. Ga. June 26, 2008) (denying Daubert motion to exclude expert to calculate loss of goodwill). Similarly, proving lost profit requires expert testimony. "Florida courts have often noted that proving lost profits damages is difficult, but by no means impossible." *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1217 (11th Cir. 2006); *see also Premier Lab Supply, Inc. v. Chemplex Indus., Inc.*, 94 So. 3d 640, 642-43 (Fla. 4th DCA 2012) (describing expert testimony about lost profits in trade secret case).

Because Sentry's damages calculation will require extensive expert testimony, the better approach is to wait until that is available. *See Robert Bosch*, 2013 WL 1703328, at *4; *see also Cont'l Motors, Inc. v. Jewel Aircraft, Inc.*, 2012 WL 13041865, at *4 (S.D. Ala. Nov. 28, 2012) ("[I]t makes the most sense not to compel responses to these interrogatories now, but to wait for CMI's expert disclosures"); *Bernstein v. Mafcote, Inc.*, 2014 WL 3579418, at *3 (D. Conn. July 21, 2014) (detailed damages calculation "is best reserved for expert discovery and the Court will not require plaintiff to produce such an explanation at this stage").

---

[3] While *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994), held that tortious interference does not include lost goodwill from certain prospective customers, Sentry is seeking lost goodwill from existing customers.

4

The cases Defendants cite are not to the contrary. In *Azure LLC v. Figueras Seating USA Inc.*, 2014 WL 12512542, at *1 (S.D. Fla. Jan. 10, 2014), the plaintiff wanted more discovery before responding to a damages interrogatory, but the court noted that the plaintiff already provided a very specific damages figure; here, by contrast, the interrogatory is premature because a specific computation requires expert analysis. *Stone v. Zimmer, Inc.*, 2009 WL 9567924, *1 (S.D. Fla. Dec. 4, 2009) is not on point because that case turned on the plaintiff's failure to timely object to the interrogatories, and in any event the interrogatory there only called for a straightforward list of wage and employment history that did not require expert opinion. In *Rodriguez v. SMI Sec. Management, Inc.*, 2009 WL 4893161, *5 (S.D. Fla. Dec. 10, 2009), the plaintiff was directed to provide information on its damages less than two weeks before the close of discovery. *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) concerned damages from a flawed construction project and there was no indication there that damages would require anything more than a simple calculation; moreover, the court only ordered that the plaintiff provide "whatever information it possesses," and Sentry has done that here by providing the categories of damages it seeks (in addition to the documents it has agreed to produce). Finally, in *Boldstar Technical, LLC v. Home Depot USA, Inc.*, 2008 WL 11320010, *1-3 (S.D. Fla. Feb. 2, 2008), while the plaintiff contended that it needed further discovery before it could fully respond to the interrogatory, it made no suggestion that it required expert assistance in making the requested computations; Sentry, by contrast, is incapable of making a damages computation based on *any* information until its expert makes a report.

Although Interrogatory No. 10 largely tracks the language of Rule 26, Defendants did not contend that Sentry's initial disclosures were inadequate under Rule 26. Because Sentry has complied with Rule 26, Interrogatory No. 10 is essentially a contention interrogatory seeking

disclosure of Sentry's theory of damages, which does not need to be answered early in discovery. *See* Fed. R. Civ. P. 33(a)(2) ("[T]he court may order that the [contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."); *see, e.g., Suffolk Cty. v. Lilco*, 1988 WL 69759, at *1 (E.D.N.Y. June 13, 1988) ("Contention interrogatories such as those propounded by the defendant here are generally not favored in the early stages of discovery." (citing *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328 (N.D. Cal. 1985)); *Shannon v. New York City Transit Auth.*, 2001 WL 286727, at *3-4 (S.D.N.Y. Mar. 22, 2001) (finding that contention interrogatories were premature where only document discovery had occurred). Here, discovery is at an early stage. Courts have considerable discretion as to the timing of the response to contention interrogatories, and compelling a response now would be inefficient. Not only does a response require expert analysis, but Sentry's damages are ongoing because Defendants' improper conduct is continuing. Sentry will serve an amended response before the close of fact discovery providing a more detailed response about the damages for its various causes of action.

> **B.   Sentry's Responses to Defendants Requests for Admission Are More than Adequate**

Defendants served 37 RFAs on Sentry. Sentry provided a response to each one. Nevertheless, Defendants seek to compel Sentry to provide more "complete" responses as to five of the RFAs. Those RFAs were objectionable *in toto*, as they used plainly ambiguous and pejorative language or concerned information beyond Sentry's knowledge and control, and Sentry would have been justified in simply denying them. Nevertheless, Sentry provided, to the best of its ability, a substantive response to each of these RFAs. Sentry's responses are more than sufficient to fully and properly respond to each of these RFAs.

1.  Requests Concerning "Bugs" in Sentry's Software and "Negative" Public Statements (RFAs Nos. 6, 7, 9)

Defendants' RFAs Nos. 6, 7, and 9, and Sentry's full response, read:

**REQEST NO. 6:**
During the time that CVS was using Sentry's Backbone product Backbone had bugs.

**RESPONSE TO REQUEST NO. 6:**
Admitted that CVS had some criticism of Backbone and wanted Sentry to make some modifications in Backbone, both of which are typically the case with any new software product and that Sentry continued to make modifications to Backbone at the request of CVS until Sentry terminated the Backbone contract; otherwise denied.

**REQUEST NO. 7:** During the time that CVS was using Sentry's Backbone product, Backbone had bugs that Sentry attempted to fix with mixed success.

**RESPONSE TO REQUEST NO. 7:**
[Verbatim identical to Response to 6]

**REQUEST NO. 9:**
Since the issuance of the CVS Announcement, Plaintiff has issued negative Public Statements regarding Defendants.

**RESPONSE TO REQUEST NO. 9:**
Sentry objects to this request as vague because the word "negative" is imprecise and undefined and can have a wide range of meanings. Subject to and notwithstanding that objection, admitted that Plaintiff has issued Public Statements regarding Defendants since the issuance of the CVS Announcement that were truthful, matters of opinion, or both.

As to RFAs 6 and 7, Defendants asked Sentry to admit that there were "bugs" in its Backbone$^{TM}$ software.  But "bugs" is subjective and pejorative.  Rather than simply deny those requests, Sentry admitted that CVS had criticisms of its product and that it worked with CVS to modify the product.  It also noted that it was typical of new software products to involve both criticism and subsequent improvements.  To the extent the RFAs sought more, Sentry denied the request.  Sentry thus responded to the "substance of the request," *Rebman*, 2008 WL 3928793 at *1, admitting that it made modifications to its software product in response to CVS's concerns and criticisms, and it denied the remainder of the request; its response is complete and proper.

As to RFA 9, Defendants asked Sentry to admit that it had made "negative" public statements about Defendants. But "negative" is, again, subjective and pejorative. Sentry objected to the request on precisely this ground: "this request [is] vague because the word 'negative' is imprecise and undefined and can have a wide range of meanings." Again, Sentry could simply have denied the RFA. Instead, Sentry provided a response to the best of its ability given the vague and subjective nature of Defendants' request, stating that had issued such public statements that were truthful, matters of opinion, or both. It is also worth noting that, as Defendants acknowledge, *see* D.E. 126 and pp.8-9, Sentry listed its public statements about Defendants in an interrogatory response. Sentry does not have to admit that Defendants' subjective and undefined term—"negative"—properly describes those statements.

Courts in this circuit and elsewhere have routinely rejected the sort of vague, subjective requests for admission that Defendants propounded. "Statements that are vague, or statements susceptible of more than one interpretation, defeat the goals of Rule 36 and are properly objectionable." *Lewis v. Michaels Stores, Inc.*, 2007 WL 2021833, at *1 (M.D. Fla. July 12, 2007) (quoting *Honeycutt v. First Fed. Bank*, 2003 WL 1054235, at *1 (W.D.Tenn. Mar.5, 2003)); *see also Uber Promotions, Inc. v. Uber Techs., Inc.*, 2016 WL 9115991, at *2 (N.D. Fla. May 26, 2016) (giving as examples of an improper RFA, "Imagine a tort case involving a child left in a car on a summer day. A request for admission reading 'admit that it was hot that day' would be a problem because it would necessarily call for qualification or clarification—namely, what the party responding to the request considered 'hot.'"); *Honeycutt*, 2003 WL 1054235, at *1 ("Statements are also properly objectionable if they use pejorative language or innuendo; if they contemplate a legal standard; if they require lengthy explanations before they can fairly be answered; or if they require inferences."); *Moore v. Rees*, 2007 WL 1035013, at *16 (E.D. Ky.

8

Mar. 30, 2007) ("Where the requests generally suffer from vagueness or repeatedly require the respondent to qualify its answer, compelling responses would frustrate rather than further the goals of Rule 36."). Here, Defendants' requests regarding "bugs" and "negative" public statements are vague, subjective, pejorative, and could be interpreted in any number of ways, and so Sentry's responses to these questions are appropriate and serve to dispel the unintended impressions that might otherwise arise from an unqualified answer to Defendants' requests.[4]

2. Requests Concerning Walgreens' Market Share (RFA Nos. 28, 29)

Defendants' RFAs Nos. 28 and 29, and Sentry's full response, reads:

**REQUEST NO. 28:**
CVS has fewer Contract Pharmacy locations than Walgreens.

**RESPONSE TO REQUEST NO. 28:**
Admitted that in its complaint, Sentry alleges: "Although Walgreens is the single largest contract pharmacy, it is among the slowest growing of the major contract pharmacy chains, increasing its number of contract pharmacy locations by just 19 percent since 2013. CVS, the second largest contract pharmacy, has increased its contract pharmacy locations by 281 percent over the same period."

**REQUEST NO. 29:**
CVS serves as the Contract Pharmacy for fewer Covered Entities than Walgreens.

**RESPONSE TO REQUEST NO. 29:**
[Verbatim identical to response to No. 28]

---

[4] The cases Defendants cite are not to the contrary, as those cases involved straightforward, fact-based requests rather than the sort of pejorative and ambiguous requests condemned by the *Lewis* and *Uber Promotions* courts. *Cf. Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2017 WL 2705426, at *2 (S.D. Cal. June 23, 2017) (RFA "simply asks ORI for an admission whether it intended to influence consumers to purchase Lipozene with certain advertising claims"); *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 2008 WL 2323777, at *2 (N.D. Ohio June 4, 2008) ("ORW was asked to admit that the PANOFLO product comprises a specific configuration"); *Bldg. Materials Corp. of Am. v. Henkel Corp.*, No. 615CV548ORL22GJK, 2016 WL 7666166, at *4 (M.D. Fla. Mar. 14, 2016) (RFA "only asked whether GAF requested a modification of the Product to include the addition of an antioxidant"). Moreover, the *Building Materials* court also denied a motion to compel as to a different RFA because it agreed that it was, as here, a "vaguely phrased question." *Id.* at *4-5.

9

Defendants asked Sentry to admit Walgreens has more Contract Pharmacies than CVS. Defendants plainly know that Sentry does not have direct access to this information or any way to directly acquire it. Sentry made allegations regarding these numbers in its Complaint and its Amended Complaint, D.E. 1 and D.E. 123. Although Sentry does not have personal knowledge of the number of CVS and Walgreen stores, it had a good faith basis for its allegations based on publicly-available data and statements by CVS, Walgreens, and industry groups. Sentry admitted that it made these allegations. Its response thus fully addresses the "substance of the request," *Rebman*, 2008 WL 3928793 at *1, and no further response is necessary. Sentry cannot unqualifiedly admit these allegations because the information regarding the numbers of CVS and Walgreens contract pharmacies are—aside from publicly-available hearsay statements—plainly outside of Sentry's possession or control.

### C. If the Court Grants Defendants' Motion, It Should Decline to Deem Defendants' Requests Admitted

If the Court disagrees with Sentry's position and grants Defendants' motion as to one or more RFA, Sentry respectfully requests that Court afford it an opportunity to formulate a new response or responses, rather than deeming all of the requests admitted. This decision is within the Court's discretion. *See* Fed. R. Civ. P. 36(a)(6) ("On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."); *Essex*, 230 F.R.D. at 687 ("The sanction of deeming a response an admission, however, is a severe one. Rather, the courts generally order an amended answer . . . ."). Sentry provided a good-faith substantive response to each of Defendants' RFAs, and it has not acted to create unnecessary expense or delay.

## CONCLUSION

For these reasons, Sentry respectfully requests that the Court deny Defendants' motion.

Dated:  October 1, 2018 					Respectfully submitted,

							**BOIES SCHILLER FLEXNER LLP**

							By:*/s/ Carl E. Goldfarb*

        Stephen N. Zack, Esq.
        Florida Bar No. 145215
        100 SE Second Street, Suite 2800
        Miami, Florida  33131
        Telephone:  (305) 539-8400
        Facsimile:   (305) 539-1307
        Email:  szack@bsfllp.com

        Carl E. Goldfarb, Esq.
        Florida Bar No. 125891
        Travis Robert-Ritter, Esq.
        Florida Bar No. 103936
        401 East Las Olas Boulevard, Suite 1200
        Fort Lauderdale, Florida 33301
        Telephone: (954) 356-0011
        Facsimile:  (954) 356-0022
        Email: cgoldfarb@bsfllp.com
        Email: tritter@bsfllp.com

        Christopher G. Renner, Esq.
        (pro hac vice)
        1401 New York Ave., NW
        Washington, DC 20005
        Telephone:  (202) 237-2727
        Facsimile:   (202) 237-6131
        Email: crenner@bsfllp.com

*Counsel for Plaintiff Sentry Data Systems, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the court's CM/ECF System on October 1, 2018.

By: */s/ Carl E. Goldfarb*
Carl E. Goldfarb, Esq.