UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-60257-BLOOM-Valle

SENTRY DATA SYSTEMS, INC.,

       Plaintiff,

v.

CVS PHARMACY, INC.,
and WELLPARTNER, LLC,

       Defendants.
_____/

**PLAINTIFF SENTRY DATA SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**BOIES SCHILLER FLEXNER LLP**

Stephen N. Zack, Esq.
100 SE Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307
Email: szack@bsfllp.com

Carl E. Goldfarb, Esq.
Travis Robert-Ritter, Esq.
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: cgoldfarb@bsfllp.com
Email: tritter@bsfllp.com

Christopher G. Renner, Esq.
(pro hac vice)
1401 New York Ave., NW
Washington, DC 20005
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email: crenner@bsfllp.com

*Counsel for Plaintiff Sentry Data Systems, Inc.*

# INTRODUCTION

As Sentry explained in its Amended Complaint and its initial Motion, D.E. 123 and D.E. 128, market power in the 340B contract pharmacy market is a *function* of market power in the pharmaceutical sales and specialty pharmaceutical sales markets. That is because Covered Entities seek to contract with the pharmacies where their patients fill their 340B eligible prescriptions for both regular and specialty drugs. Sentry also explained that barriers to entry into the 340B contract pharmacy market include the challenge of competing in the markets for pharmaceutical and specialty pharmaceutical sales.

Ignoring the realities of the 340B contract pharmacy, Defendants repeatedly parrot the incorrect and overly-simplistic assertion that because the pharmaceutical and specialty sales markets are not the "relevant market" of 340B contract pharmacy services, they are therefore irrelevant to Sentry's claim. Not only is Defendants' assertion wrong, it is refuted by Wellpartner's own, current promotional materials, which repeatedly and explicitly tout Wellpartner's status as a CVS company and its access to pharmaceuticals and specialty pharmaceuticals in marketing its 340B services.

# ARGUMENT

A.   A Stay of Discovery Is Not Warranted

Defendants first argue that Sentry's motion is "premature" because they should not be compelled to produce the sought-after documents until the Court has ruled on its pending motion to dismiss. What they are actually requesting is a partial stay of discovery while the Court rules on the motion. Defendants never met and conferred with Sentry regarding this request, and their premature motion for a discovery stay should be rejected on those grounds alone. But there are also no grounds for such a stay, especially where, as explained below, Sentry's requests are

relevant and proportional.  "[D]iscovery stay motions 'are generally denied except where a specific showing of prejudice or burdensomeness is made or where a statute dictates that a stay is appropriate or mandatory.'"  *Montoya v. PNC Bank, N.A.*, 2014 WL 2807617, at *2 (S.D. Fla. June 20, 2014) (quoting S.D. Fla. Local Rules).  Defendants rely on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368-69 (11th Cir. 1997), but *Chudasama* "does not indicate a broad rule that discovery should be deferred whenever there is a pending motion to dismiss." *Gannon v. Flood*, 2008 WL 793682, at *1 (S.D. Fla. Mar. 24, 2008).  Sentry's antitrust and tortious interference claims are hardly "especially dubious" (unlike the fraud claim in *Chudasama*, which was "novel and of questionable validity").  123 F.3d at 1368. Accordingly, the Court should decline to stay discovery here.

      **B.**    **Sentry's Discovery Requests Are Relevant and Proportional**

Market power in the 340B contract pharmacy market "depends on" market power in the pharmaceutical and specialty sales markets.  D.E. 128 at pp.4-7.  Defendants avoid addressing this argument on the merits, *see* D.E. 134 at pp.7-8, and instead circuitously suggest that 340B-related documents will necessarily be sufficient.  But Defendants' position is belied by Wellpartner's own marketing materials, which underscore the importance of a contract pharmacy's presence in the pharmaceutical and specialty pharmaceutical markets to Covered Entities selecting contract pharmacies for their 340B program.

Wellpartner's website trumpets as a key selling point the following claim: working with Wellpartner to access CVS pharmacies "Gives Covered Entities access to the broadest network of retail and specialty pharmacies." Exhibit A.[1]  That contention in and of itself belies the entire basis of Defendants' opposition.  The homepage of Wellpartner's website boasts of its "60,000+

---

[1] "Exhibit" refers to exhibits to the Goldfarb Declaration dated October 8, 2018, attached hereto.

Pharmacy Network," bragging that this "extensive pharmacy network gives patients choices, while driving program value and helping our customers grow their businesses."  Exhibit B.  Another page proclaims that Wellpartner's "expertise in pharmacy network contracting" will allow Covered Entities to "build[] pharmacy networks to drive program value."  Exhibit C.  The website also plugs the benefit of "Access to the broadest specialty pharmacy network."  *Id.*  And it advises that a successful 340B administrator must "identify the key community retail pharmacies and specialty pharmacies, where patients are filling their prescriptions."  Exhibit D.  The same page announces that an effective contract pharmacy network must include "High performing retail and specialty pharmacies" and the ability to "contract with limited and exclusive specialty pharmacy networks," such as those administered by CVS, to ensure that "specialty prescriptions previously locked out of a 340B program by health plan's PBMs and their captive specialty pharmacies can be captured."  *Id.*  The website also touts Wellpartner's expertise in "providing our . . . specialty pharmacy services," "aligning specialty network access," and "maximizing claims capture."  Exhibit E.[2]

In short, and directly contrary to Defendants' opposition, Wellpartner's marketing materials echo Sentry's motion to compel.  The succinct lesson: success in the 340B contract pharmacy market turns on access to the pharmaceutical and specialty sales markets because Covered Entities want to contract with the pharmacies where their patients fill their 340B prescriptions. Thus, discovery regarding power in such markets is directly relevant to market power in the 340B contract pharmacy market.

---

[2] Wellpartner's website is replete with similar assertions.  For example, the website also states that a hospital "recognized the lack of convenient pharmacies" in its network, and so Wellpartner "improved pharmacy access," continued to "negotiate[] contracts with additional pharmacies," and offered the "unique ability to unlock specialty prescriptions from exclusive networks," and "access to over 60,000 pharmacies."  Exhibit F.

Defendants' cases are not to the contrary.  In *Mfg. Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1043 (11th Cir. 1982), a case involving (failed) antitrust claims related to monopolization of the cable bender market, the court denied an attempt to conduct discovery regarding the market power in the conduit bender market where "No proof of any connection between Greenlee's conduct in the conduit bender market and that in the cable bender market was offered," and "Greenlee's share of the conduit bender market has been determined to be irrelevant to the cable bender market." *Id.* at 1043-44.  Here, by contrast, Defendants' power in the pharmaceutical and specialty sales markets *is* related to their power in the 340B contract pharmacy market, and is indeed a primary determinant of such market power (as Wellpartner's own website demonstrates).  Defendants' attempt to distinguish *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 180, 183, 185 (S.D.N.Y. 1974) does not negate the fact that the court allowed discovery into an "intimately interconnected" market that was not the "relevant market" at issue, holding that "Even if the relevant market were confined to 'general purpose digital computers,' the broad scope of discovery under the Federal Rules would permit inquiry by plaintiff into [the other market]."  Defendants also distinguish *Schmidt v. Columbia Pictures Indus., Inc.*, 1986 WL 13357, at *2-3 (D. Nev. Apr. 14, 1986) on the grounds that it pertained to geographic, rather than product markets, but do not explain why that matters (it does not), and they skirt around the fact that court allowed discovery into non-"relevant" markets.

Sentry's discovery requests are also proportional and not unduly burdensome.  Sentry has already agreed to significantly limit the scope of its requested discovery.  D.E. 128 at pp.7-8, 8-9.  Sentry is not requesting (nor does it want) *every* document relating to Defendants' non-340B lines of business.  Rather, Sentry is requesting a limited number of high-level documents relating to market share and market power in the pharmaceutical and specialty pharmaceutical markets,

4

from an agreed-upon number of custodians, based on agreed-upon search terms (subject to revision if they return too many results). Nor does Sentry seek every document that Defendants produced to the DOJ,[3] as Defendants implausibly suggest. Sentry's request would only encompass a small fraction of Defendants' production to the DOJ, a fraction identified through agreed upon search terms, which would ensure both that the documents were relevant and limited in number. The fact that Defendants have already produced these documents would minimize any burden associated with their production. Because Defendants must have had a factual basis for their statements regarding the "Top 100 Drugstore Markets" in their 2015 10-K filing, producing the relevant supporting documents should not be burdensome, either.

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2016 WL 6534394, at *3-4 (D. Minn. Nov. 2, 2016) is not on point because there the court limited discovery to the allegations in the complaint; Sentry's Amended Complaint repeatedly alleges the importance in this case of the pharmaceutical and specialty sales markets. Defendants also complain that Sentry's requests are not limited to any geographic market, but Sentry has alleged that the relevant geographic market is the national market (in addition to 22 defined local markets). D.E. 123 ¶¶ 112-16.[4]

## CONCLUSION

For these reasons, Sentry respectfully requests that the Court grant Sentry's motion.

---

[3] As explained, D.E. 128 at pp.8-9, Sentry limited its requests regarding the DOJ's review of the Aetna merger to effects on the pharmaceutical and specialty sales markets. Unlike the discovery request denied in *Arrowpac Inc. v. Sea Star Line, LLC*, 2014 WL 12618327, at *2 (M.D. Fla. Jan. 31, 2014), Sentry is not seeking "wholesale production," including "irrelevant materials."

[4] Defendants' reliance on *In re Photochromic Lens Antitrust Litig.*, 2012 WL 12904391, at *4 (M.D. Fla. Dec. 20, 2012), and *T C Theatre Corp v. Warner Bros Picture*, 16 F.R.D. 173, 175 (S.D.N.Y. 1954), is accordingly inapposite, as those decisions turned on a failure to limit the requests to an appropriate geographic market.

Dated:  October 8, 2018	Respectfully submitted,

        **BOIES SCHILLER FLEXNER LLP**

        By:*/s/ Carl E. Goldfarb*

            Stephen N. Zack, Esq.
            Florida Bar No. 145215
            100 SE Second Street, Suite 2800
            Miami, Florida  33131
            Telephone:  (305) 539-8400
            Facsimile:   (305) 539-1307
            Email:  szack@bsfllp.com

            Carl E. Goldfarb, Esq.
            Florida Bar No. 125891
            Travis Robert-Ritter, Esq.
            Florida Bar No. 103936
            401 East Las Olas Boulevard, Suite 1200
            Fort Lauderdale, Florida 33301
            Telephone: (954) 356-0011
            Facsimile:  (954) 356-0022
            Email: cgoldfarb@bsfllp.com
            Email: tritter@bsfllp.com

            Christopher G. Renner, Esq.
            (pro hac vice)
            1401 New York Ave., NW
            Washington, DC 20005
            Telephone:  (202) 237-2727
            Facsimile:   (202) 237-6131
            Email: crenner@bsfllp.com

        *Counsel for Plaintiff Sentry Data Systems, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the court's CM/ECF System on October 8, 2018.

By: */s/ Carl E. Goldfarb*
Carl E. Goldfarb, Esq.